# EXHIBIT B

**Defendants' Summary Chart of Material Facts**

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| 1. | Plaintiff Jamal Robinson joined the Metropolitan Police Department ("MPD") in April 2012.  Robinson Dep. at 9:13-9:14, relevant excerpts attached as Exhibit 1. | Admitted. | |
| 2. | Officer Maurice Clifford joined MPD in 2002.  Clifford Dep. at 17:21-18:5, relevant excerpts attached as Exhibit 2. | Admitted. | |
| 3. | Clifford worked for the Gun Recovery Unit ("GRU") from 2011 to 2015.  Clifford Dep. at 18:12-18:15. | Admitted. | |
| 4. | Detective Scott Pinto joined MPD in 2002.  Pinto Dep. at 7:4-7:18, relevant excerpts attached as Exhibit 3. | Admitted. | |
| 5. | Pinto worked for GRU from 2011 to 2016.  Pinto Dep. at 7:22-8:11. | Admitted. | |
| 6. | The mission of the GRU is to take illegal firearms off the streets of the District through interdiction, search warrants, and arrests.  Clifford Dep. at 26:12-27:2. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation | Plaintiff's statement that this is not a material fact is incorrect.  The reason for the Defendant Officers being on the 5500 Block of C Street S.E. on the day of the incident is both relevant and |

|  | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
|  |  | of the motion. | material. |
| 7. | In the course of performing this duty, GRU enforces the laws of the District and enforces any violations of the laws that the GRU officers observe while on patrol.  Clifford Dep. at 30:8-30:19, 34:22-35:14. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. | Plaintiff's statement that this is not a material fact is incorrect.  The reason for the Defendant Officers being on the 5500 Block of C Street S.E. on the day of the incident is both relevant and material. |
| 8. | Robinson testified that he did not know what type of training officers on GRU receive. Robinson Dep. at 41:10-41:12. | Denied. GRU officers are MPD officers also. Plaintiff Robinson testified to the training that all MPD officers on patrol receive on making stops, detainments and arrests. Robinson Dep. At 9:11-16-7. | The fact that GRU officers receive training like other MPD officers is irrelevant.  Robinson did not know the training the Defendant Officers received as members of the specialized GRU unit. |
| 9. | On November 6, 2013, Officers Clifford, Pinto, and Ryan Roe were on patrol in the same vehicle.  Clifford Dep. at 54:2-54:5, 55:1-55:2. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. | Plaintiff's statement that this is not a material fact is incorrect.  The reason for the Defendant Officers being on the 5500 Block of C Street S.E. on the day of the incident is both relevant and material. |
| 10. | The officers were wearing tactical police vests with the word "POLICE" on the front | Admitted. |  |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| | and back.  Clifford Dep. at 122:16-123:15; Pinto Dep. at 73:22-74:19. | | |
| 11. | During the course of the day, Officers Clifford, Pinto, and Roe were conducting gun interdiction on the block of 5500 C Street, S.E.  *See* Final Investigation Relating to the Misconduct by Officer Jamal Robinson, attached as Exhibit 4. | Disputed. There was no 'interdiction' on the 5500 Block of C street SE. The officers were just driving down the street and decided they wanted to stop Mr. Robinson and his brother. Robinson Dep. at 47:17-21 | Robinson's testimony does not dispute this fact and simply addresses his recollection of certain events. Defendants' Exhibit 4 clearly states that the officers were engaged in gun interdiction in that area on November 6.  Moreover, Plaintiff failed to attach this portion of the deposition to his opposition. |
| 12. | Robinson described the Southeast area of D.C. as "booming" and a high crime area. Robinson Dep. at 106:8-107:3. | Denied. Robinson gave a mixed response to defense counsel question in this specific instance. Robinson Dep. at 106:8-107:3. At other points, Robinson spoke positively of his neighborhood and neighbors and admits he has no facts or statistics to support a claim that SE D.C. is a 'high crime area. Robinson Depo at 106: 1-21; 277:1-20. | Plaintiff's testimony on page 277 of his deposition that he has not studied facts or information relating to crime statistics does not dispute his admission describing the Southeast area of D.C. as booming and a high crime area. |
| 13. | The officers were driving on the block of 5500 C Street, S.E. and observed Robinson sitting on the retaining wall of a vacant property with no trespassing signs.  Clifford Dep. at 55:17-56:8; Pinto Dep. at 17:10-17:21; Robinson Dep. at 49:18-50:12. | Denied. Plaintiff Robinson was sitting on a very low "wall" about 1½ feet high. Plaintiff Ex #2 (Google Map of 5517 C st SE as of 8/2014). A no trespass sign is behind the screen door only. No such sign is present in the lawn nor near the sidewalk | The undated photographs do not undermine the testimony from all three witnesses that there was a no trespassing sign on the vacant property. |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| | | where Robinson was sitting peacefully. | |
| 14. | There was a vehicle parked in front of Robinson.  Clifford Dep. at 75:14-75:22. | Admitted. | |
| 15. | Pinto testified that the vehicle was not properly parked and had heavy tint on the windows.  Pinto Dep. at 17:7-17:16. | Denied. Plaintiff contends that the vehicle was legally parked. Pinto Dep. at 17:1-20:2. | The testimony to which Plaintiff cites does not dispute this fact.  Pinto clearly testified that the vehicle was not properly parked.  Pinto also testified that the driver was arrested. *See* Pinto Dep. at 18:11-21:9 |
| 16. | Robinson's brother was in the vehicle. Robinson Dep. at 62:1-62:11. | Admitted. | |
| 17. | Pinto recalled that the driver of the vehicle and Robinson appeared to be talking with each other.  Pinto Dep. at 34:16-34:20. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. | Plaintiff's statement that this is not a material fact is incorrect.  The officers' recollection of the scene of the incident is material. |
| 18. | Robinson was off-duty and wearing tan pants, a green shirt, and a black coat. Robinson Dep. at 80:20-81:2, 98:9-98:15. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. | Plaintiff's statement that this is not a material fact is incorrect.  The fact that Robinson was dressed in civilian clothes is relevant and material. |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| 19. | Clifford testified that if he observed an individual on a vacant property that displayed no trespassing signs, he would investigate the individual for unlawful entry and determine whether the individual resided there or had a reason to be there.  Clifford Dep. at 40:2-40:13, 44:3-44:9; *see also* Pinto Dep. at 43:14-43:21 (testifying that being on the curtilage to a property that has a no trespassing sign could constitute unlawful entry). | Denied. The problem is that Clifford is wrong and is untrained as to the definition of the legal meaning of Unlawful Entry under D.C. Code Sec. 22-3302. Clifford is also wrong on curtilage. See Clifford Depo. at 58:1-66:22. The MPD Internal Affairs Division Investigation explicitly exonerates Robinson from any criminal misconduct. IAD Findings further declare that sitting on the fringe of an abandoned property is not against the law and that the steps and sidewalk are considered public property. Plaintiff Ex. #1 at page 16-17. | Plaintiff offers no evidence to support his position that this fact is disputed. Plaintiff did not attach "Plaintiff Ex. #1" to his opposition.  If the internal investigation stated that sitting on the fringe of an abandoned property is not against the law does not undermine Clifford's testimony or render it in dispute. |
| 20. | Moreover, in Clifford's and Pinto's experience, vacant properties are used as stash houses for weapons and drugs. Clifford Dep. at 44:3-44:9; Pinto Dep. at 46:9-46:14. | Denied. All vacant houses in S.E. D.C. are not drug houses. Defendants may stereotype them that way but this is far from fact. Robinson Dep. at 105:7- 107:19. Defendant Clifford admits that he never stopped anyone in the 2nd District in front the vacant houses he encountered in the 2nd District while on patrol. Clifford Dep. at 50:1-53:22. | Plaintiff does not offer any evidence that this fact is in dispute.  Clifford and Pinto did not testify that all vacant houses in Southeast D.C. are drug houses.  The officers testified that in their experience some vacant properties may be used as stash houses.  Whether or not the officers had stopped other individuals in another area of D.C. is entirely irrelevant. |
| 21. | In his experience, Clifford has conducted arrests of individuals for unlawful entry that | Denied. Defense has offered no evidence in the course of discovery to support the | Plaintiff offers no evidence to support his position that this fact is disputed. |

| Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|
| began with his observation of an individual sitting on the curtilage of vacant properties with no trespassing signs and has had those cases "papered" in that the cases progressed further in the prosecution process after an arrest.  Clifford Dep. at 116:1-116:18. | allegation that Clifford has had his cases regarding arresting people on the curtilage of properties, 'papered'(he does not claim a conviction). However, officer Clifford admits that he does not know D.C. Code Sec. 22-3302 on Unlawful Entry. Clifford has been stretching the bounds of the law and running afoul of the 4th amendment in his overzealous pursuit to get guns off the street. Robinson was not on the property nor even on the curtilage of the property. Clifford Depo. at 58:1-66:22; 36:1-47:14. The MPD Internal Affairs Division Investigation explicitly exonerates Robinson from any criminal misconduct. IAD Findings further declare that sitting on the fringe of an abandoned property is not against the law and that the steps and sidewalk are considered pubic property. Plaintiff Ex. #1 at page 16-17. Defendant Clifford, no stranger to controversy, has been to trial as a defendant at trial in an excessive force lawsuit and testified in another where members of his unit were named defendants. Clifford Dep. at 5:1-8:22. | Plaintiff did not attach "Plaintiff Ex. #1" to his opposition.  If the internal investigation stated that sitting on the fringe of an abandoned property is not against the law does not undermine Clifford's testimony or render it in dispute.  Defendants also object to Plaintiff's mischaracterization that Clifford is "no stranger to controversy."  Clifford testified that he was acquitted in a trial relating to claims of excessive force.  Clifford Dep. at 8:21-9:2.  Whether Clifford testified as a witness in a case involving a claim by another plaintiff against another GRU officer is irrelevant. |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| 22. | Clifford testified that Robinson was on the property by virtue of sitting on the retaining wall of the property. Clifford Dep. at 66:15-66:21. | Admitted. This is where Officer Clifford is mistaken on the law without reason and he is clearly untrained. The reason being is that there is no law prohibiting being on the retaining wall of a property while on the public sidewalk. Unfortunately, this is a practice and custom for Clifford and GRU. Clifford Dep. 36:1- 47:14; 58:1-66:22. The MPD Internal Affairs Division Investigation explicitly exonerates Robinson from any criminal misconduct. IAD Findings further declare that sitting on the fringe of an abandoned property is not against the law and that the steps and sidewalk are considered pubic property. Plaintiff Ex. #1 at page 16-17. | Defendants object to Plaintiff's statement that "Clifford is mistaken on the law without reason and he is clearly untrained." Clifford testified that, in his experience, he has conducted arrests of individuals for unlawful entry that began with his observation of an individual sitting on the curtilage of vacant properties with no trespassing signs and has had those cases "papered" in that the cases progressed further in the prosecution process after an arrest. Clifford Dep. at 116:1-116:18. Moreover, Plaintiff did not attach "Plaintiff Ex. #1" to his opposition. If the internal investigation stated that sitting on the fringe of an abandoned property is not against the law does not undermine Clifford's testimony or render it in dispute. |
| 23. | Based on the totality of the circumstances, the officers had reasonable suspicion that Robinson may have committed unlawful entry or attempted to commit unlawful entry. Clifford Dep. at 62:1-63:7; Pinto Dep. at | Response: Denied. The defendant officers actual reason for stopping Robinson are in hot dispute between the parties. Plaintiff testifies that the property, or right to be on it, was never mentioned by defendants prior to his detention turned arrest. The | Defendants object to Plaintiff's unsupported statements and characterization of the reasonable suspicion statement. These statements do not render this fact to be in dispute. Whether Robinson denies any reason |

| Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|
| 43:14-43:21. | officers first and only words were demanding to search Mr. Robinson. You cannot detain a person without a reasonable suspicion that a crime has actually been committed, which did not exist in this case. Robinson, a trained officer, denies any legal reason to stop him for investigation. Robinson dep. at 116: 7-12. Plaintiff Robinson testifies that the first and sole questions the defendant officers asked him were ones demanding to search him. When he rightfully refused, and was asked was he armed, Robinson explained that he was MPD and was armed and was immediately tackled by the officers. Robinson 47:17-49:11 see also 65:17-67:10 Plaintiff testifies that Defendant officers lied to him at some point in his roughly one hour arrest about a call being made against him and that being reason for the investigative stop. Clifford has testified that no such call ever occurred and there is Defendants are not alleging such either. Robinson Dep. at 242:15- 244:1 The officers had no reasonable suspicion to stop and search Mr. Robinson, who was doing nothing wrong and gave no hint of | to stop him is irrelevant.  Further Defendants object to Plaintiff's characterization that Robinson informed the officers that he was a member of MPD before saying he had a weapon.  Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer.  Robinson Dep. at 201:12-202:3, 214:1-214:5. Robinson's statement that a call had been made against him is irrelevant.

Nothing from the testimony Plaintiff cites from Clifford or Pinto undermines their testimony that they had reasonable suspicion to detain Robinson.

Moreover, Plaintiff did not attach "Plaintiff Ex. #1" to his opposition.  If the internal investigation stated that sitting on the fringe of an abandoned property is not against the law does not undermine Clifford's or Pinto's testimony or render it in dispute. |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| | | committing any crime whatsoever. Clifford Dep. at 58:1-66:22; 36:1-47:14; 66:1-69:22. Defendant Pinto confirms that Robinson was only on the wall and claims that being on the wall with feet on the sidewalk constitutes reasonable suspicion of criminal activity. Pinto Dep at 28:1-22; 44:1-47:22. Plaintiff sternly disagrees with Pinto on this matter. The MPD Internal Affairs Division Investigation explicitly exonerates Robinson from any criminal misconduct. IAD Findings further declare that sitting on the fringe of an abandoned property is not against the law and that the steps and sidewalk are considered public property. Plaintiff Ex. #1 at page 16-17. | |
| 24. | Based on their observations, the officers believed that Robinson was possibly in violation of the unlawful entry law, and stopped to investigate the situation further and ascertain whether there was probable cause to arrest Robinson.  Clifford Dep. at 57:4-57:15, 60:5-60:17. | Response: Denied. The defendant officers actual reason for stopping Robinson are in hot dispute between the parties. Plaintiff testifies that the property, or right to be on it, was never, ever mentioned by Defendants prior to his detention turned arrest. The officers first and only words were demanding to search Mr. Robinson. You cannot detain a person without a reasonable suspicion that a crime has been committed, which did not exist in this case. | Defendants object to Plaintiff's unsupported statements and characterization of the reasonable suspicion standard.  These statements do not render this fact to be in dispute. Whether Robinson denies any reason to stop him is irrelevant. Nothing from the testimony Plaintiff cites from Clifford or Pinto undermines the testimony that they |

| Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|
| | Robinson, a trained officer, denies any legal reason to stop him for investigation. Robinson dep. at 116: 7-12. Plaintiff Robinson testifies that the first and sole questions the defendant officers asked him were demanding to search him. When he refused, and was asked was he armed, Robinson explained that he was MPD and was armed and was immediately tackled by the officers. Robinson 47:17-49:11 see also 65:17-67:10. Plaintiff testifies that Defendant officers lied to him at some point in his roughly one hour arrest about a call being made against him and that being reason for the investigative stop. Robinson Dep. at 242:15-244:1. There was no reasonable suspicion to stop Robinson. Clifford Dep. at 58:1-66:22; 36:1-47:14; 66:1-69:22. The MPD Internal Affairs Division Investigation explicitly exonerates Robinson from any criminal misconduct. IAD Findings further declare that sitting on the fringe of an abandoned property is not against the law and that the steps and sidewalk are considered pubic property. Plaintiff Ex. #1 at page 16-17. | had reasonable suspicion to detain Robinson.<br><br>Moreover, Plaintiff did not attach "Plaintiff Ex. #1" to his opposition.  If the internal investigation stated that sitting on the fringe of an abandoned property is not against the law does not undermine Clifford's or Pinto's testimony or render it in dispute. |

|  | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| 25. | The officers wanted to investigate whether Robinson owned the property or had some reason to be there.  Clifford Dep. at 60:19-61:4. | Response: Denied. The defendant officers actual reason for stopping Robinson are in hot dispute between the parties. Plaintiff testifies that the property, or right to be on it, was never, ever mentioned by Defendants prior to his detention turned arrest. The officers first and only words were demanding to search Mr. Robinson. You cannot detain a person without a reasonable suspicion that a crime has actually been committed, which did not exist in this case. Robinson, a trained officer, denies any legal reason to stop him for investigation. Robinson dep. at 116: 7-12 Plaintiff Robinson testifies that the first and sole initial questions the defendant officers asked him were demanding to search him. When he refused, and was asked was he armed, Robinson explained that he was MPD and was armed and was immediately tackled by the officers. Robinson 47:17-49:11 see also 65:17-67:10 Plaintiff testifies that Defendant officers lied to him at some point in his roughly one hour arrest about a call being made against him and that being reason for the investigative stop. Clifford has testified | Defendants object to Plaintiff's unsupported statements and characterization of the reasonable suspicion statement.  These statements do not render this fact to be in dispute. Whether Robinson denies any reason to stop him is irrelevant.

Defendants object to Plaintiff's characterization that Robinson informed the officers that he was a member of MPD before saying he had a weapon.  Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer.  Robinson Dep. at 201:12-202:3, 214:1-214:5. Robinson's statement that a call had been made against him is irrelevant.

Robinson's statement that a call had been made against him is irrelevant. |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| | | that no such call ever occurred and there is Defendants are not alleging such either. Robinson Dep. at 242:15-244:1. | |
| 26. | Pinto asked Robinson whether he lived on the property and Robinson responded that he did not.  Clifford Dep. at 57:6-57:15; Pinto 17:22-18:6. | Denied. Defendant officers did not ask such questions and Plaintiff's position is that they are fabricating and covering up the reason for the stop. Robinson Dep. at 242:15-244:1. Plaintiff Robinson testifies that the first and sole initial questions the defendant officers asked him were demanding to search him. When he refused, and was asked was he armed, Robinson explained that he was MPD and was armed and was immediately tackled by the officers. Robinson Dep. at 47:17-49:11 see also 65:17-67:10. | Defendants object to Plaintiff's characterization that Robinson informed the officers that he was a member of MPD before saying he had a weapon.  Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer.  Robinson Dep. at 201:12-202:3, 214:1-214:5. |
| 27. | When Robinson stated that he did not live on the property, the officers exited their vehicle. Clifford Dep. at 73:21-74:9. | Denied. Plaintiff Robinson testifies that the first and sole initial questions the defendant officers asked him were demanding to search him. When he refused, and was asked was he armed, Robinson explained that he was MPD and was armed and was immediately tackled by the officers. Robinson 47:17-49:11 see also 65:17-67:10. | Defendants object to Plaintiff's characterization that Robinson informed the officers that he was a member of MPD before saying he had a weapon.  Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer.  Robinson Dep. at 201:12-202:3, 214:1-214:5. |

|  | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| 28. | When the officers exited the vehicle, Robinson stood up quickly as if he was going to run and then sat back down on the wall and put his hands in his jacket pockets. Clifford Dep. at 85:7-85:16. | Denied. Robinson describes his demeanor as a relaxed state; disputing Defendants allegation that Robinson was "suspicious" and looked as if he was "going to run". Robinson Dep. 112:6-113:21. | Robinson's testimony is self-serving and does not square with the results of the internal investigation that determined Robinson engaged in misconduct by not informing the officers that he was a MPD officer prior to informing them that he had a weapon and by using excessive profanity toward the officers. *See* Defs.' Ex. 4. |
| 29. | Pinto testified that Robinson was acting suspiciously.  Pinto Dep. at 24:12-26:5, 50:17-50:21. | Denied. Robinson describes his demeanor as a relaxed state; disputing Defendants allegation that Robinson was "suspicious" and looked as if he was "going to run". Robinson Dep. 112:6-113:21… Pinto may have been racially profiling Robinson. | Robinson's testimony is self-serving and does not square with the results of the internal investigation that determined Robinson engaged in misconduct by not informing the officers that he was a MPD officer prior to informing them that he had a weapon and by using excessive profanity toward the officers. *See* Defs.' Ex. 4.  There is no evidence in the record that Pinto "may have been racially profiling Robinson." |
| 30. | Pinto proceeded to address the driver of the vehicle.  Clifford Dep. at 75:14-76:6; Pinto Dep. at 28:20-29:8. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect | Plaintiff's statement that this is not a material fact is incorrect.  Pinto's whereabouts during the incident are |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| | | whatsoever on the outcome of the litigation of the motion. | material. |
| 31. | Clifford focused his attention on Robinson. Clifford Dep. at 76:1-76:11. | Admitted. The reason he focused his attention on Plaintiff Robinson is in dispute. | |
| 32. | Clifford asked whether Robinson lived there and Robinson stated that he did not but that he lived on the block.  Clifford Dep. at 85:7-85:21. | Denied: Defendant officers did not ask such questions and Plaintiff's position is that they are fabricating and covering up the reason for the stop. Robinson Dep. at 242:15-244:1. Plaintiff Robinson testifies that the first and sole initial questions the defendant officers asked him were demanding to search him. When he refused, and was asked was he armed, Robinson explained that he was MPD and was armed and was immediately tackled by the officers. Robinson 47:17-49:11 see also 65:17-67:10. | The testimony to which Plaintiff cites does not support the claim that the officers fabricated anything or covered up the reason for the stop.  Both officers testified that they had reasonable suspicion to stop Robinson. Clifford Dep. at 62:1-63:7; Pinto Dep. at 43:14-43:21. |
| 33. | Clifford then asked Robinson to take his hands out of his pockets.  In response to Clifford's requests, Robinson said "f*ck no," "I ain't got to do sh*t you have to say," and "I ain't doing sh*t, I ain't showing you sh*t." Clifford Dep. at 85:20-86:12; *see also* Clifford Dep. at 104:22-105:7. | Denied: Plaintiff testifies that the only time he started cursing was after he was handcuffed and did not resist. Robinson Dep. at 117:1-22. | Regardless of Robinson's self-serving testimony, the evidence is undisputed that Robinson was not compliant and used excessive profanity toward the officers resulting in a finding of misconduct.  *See* Defs.' Ex. 4. |

|  | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| 34. | Based on Robinson's bad attitude, use of profanity, and failure to comply with Clifford's directives, Clifford believed that Robinson may have been engaged in criminal activity.  Clifford Dep. at 105:10-105:13. | Denied: Defendant Clifford first claims his belief is that Robinson could be committing unlawful entry. Now Clifford claims that Robinsons indignation over his false arrest is the basis for his stop. Plaintiff contends that Clifford is engaging a form of racial profiling. Plaintiff testifies that the only time he started cursing was after he was handcuffed and did not resist. Robinson Dep. at 117:1-22. | Defendants object to Plaintiff's unsupported statement.  Such statements do not render this fact in dispute.  Regardless of Robinson's self-serving testimony, the evidence is undisputed that Robinson was not compliant and used excessive profanity toward the officers resulting in a finding of misconduct.  *See* Defs.' Ex. 4. |
| 35. | Robinson testified that Clifford asked him to stand up and Robinson replied that he would not stand up to let the officer search him.  Robinson Dep. at 65:21-66:9, 199:17-200:1. | Denied: at Robinson Dep. at 65:18-66:13; 72:5-8; Plaintiff denies consent to search due to no wrongdoing. | Plaintiff explicitly testified that he would not stand up to let the officer search him.  Plaintiff's statement in response to this fact does not make sense and does not render this fact to be in dispute. |
| 36. | Roe asked Robinson if he had a weapon and Robinson responded that he did.  Clifford Dep. at 86:12-86:17. | Denied: Robinson told the officers he had gun, badge and credentials and he was MPD, then the officers jumped him Robinson Dep. 66:10-18; 47:17-49:11. | Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer.  Robinson Dep. at 201:12-202:3, 214:1-214:5.  This is consistent with the internal investigation.  See Defs.' Ex. 4.  The testimony Plaintiff cites in response to this fact does not undermine Clifford's testimony or |

|  | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
|  |  |  | render it in dispute. |
| 37. | Immediately after Robinson stated he had a weapon, Clifford grabbed Robinson. Clifford Dep. at 86:18-86:21, 90:16-91:1. | Denied: Robinson told the officers he had gun, badge and credentials and he was MPD, then the officers jumped him Robinson Dep. 66:10-18; 47:17-49:117:3-22. | Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer. Robinson Dep. at 201:12-202:3, 214:1-214:5. This is consistent with the internal investigation. *See* Defs.' Ex. 4. The testimony Plaintiff cites in response to this fact does not undermine Clifford's testimony or render it in dispute. |
| 38. | The officers detained Robinson because he said he had a weapon. Pinto Dep. at 56:20-57:7. | Denied. Plaintiff contends the stop was not legal and he was wrongfully stopped for unlawful entry. Robinson Dep. 66:10-18; 47:17-49:117:3-22. | The testimony to which Plaintiff cites does not render this fact to be in dispute. |
| 39. | Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer. Robinson Dep. at 201:12-202:3, 214:1-214:5. | Denied: Robinson told the officers he had gun, badge and credentials and he was MPD, then the officers jumped him. Robinson Dep. at 66:10-18. The announcing of the gun and his status as an officer was simultaneous at minimum Robinson Dep. at 73:3-22. Evidence shows Robinson clearly announced he was MPD first. Witness Marquette Austin tells IAD that officer Robinson announced he was an | Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer. Robinson Dep. at 201:12-202:3, 214:1-214:5. This is consistent with the internal investigation. See Defs.' Ex. 4.<br><br>Plaintiff did not attach "Plaintiff Ex. #1" to his opposition. Regardless, Austin's statement is inconsistent with |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| | | officer before he told MPD he was armed, and in his opinion, was not resisting. Plaintiff Ex. #1 at pg. 12. | Robinson's own admissions and the conclusion of the internal investigation. |
| 40. | Clifford testified that Robinson began to resist Clifford and Clifford rolled Robinson over onto his stomach, and Officer Roe assisted Clifford in putting handcuffs on Robinson.  Clifford Dep. at 86:18-87:6. | Admitted except as to resisting. Denied as to resisting. Robinson denies resisting Robinson Dep. at 79:2-79:10. Witness Marquette Austin tells IAD that officer Robinson announced he was an officer before he told MPD he was armed, and in his opinion, was not resisting. Plaintiff Ex. #1 at pg. 12. | Plaintiff did not attach "Plaintiff Ex. #1" to his opposition.  Regardless, Austin's statement is inconsistent with Robinson's own admissions and the conclusion of the internal investigation.  Regardless of whether Robinson disputes resisting, the internal investigation concluded that Robinson failed to identify himself as an officer before stating he had a weapon, used excessive profanity, and was found to have engaged in misconduct for doing so. |
| 41. | Pinto also testified that Robinson resisted being detained.  Pinto Dep. at 48:4-48:22, 59:9-60:1. | Denied. Robinson denies resisting. Robinson Dep. at 79:2-79:10. In their IAD investigations, Clifford, Pinto and Sergeant Sloan make no mention of Robinson resisting arrest, being violent or being considered for arrest at any time for assault on a police officer (APO). Plaintiff Ex. #1 MPD IAD Investigation.  Witness Marquette Austin tells IAD that officer Robinson announced he was an officer | Plaintiff did not attach "Plaintiff Ex. #1" to his opposition.  Regardless, Austin's statement is inconsistent with Robinson's own admissions and the conclusion of the internal investigation.  Regardless of whether Robinson disputes resisting, the internal investigation concluded that Robinson failed to identify himself as an officer before stating he had a |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| | | before he told MPD he was armed, and in his opinion, was not resisting. Plaintiff Ex. #1 at pg. 12 | weapon, used excessive profanity, and was found to have engaged in misconduct for doing so. |
| 42. | Clifford testified that he placed Robinson in an "arm bar" and grabbed one of Robinson's arms to place a handcuff on him.  Because Robinson was resisting, Roe grabbed Robinson's other arm to place the other handcuff on him.  Clifford Dep. at 91:3-91:14; 108:14-109:14. | Denied. Robinson denies resisting. Robinson Dep. at 79:2-79:10. Clifford is staunchly disputed as to his hindering contention. In their IAD investigations, Clifford, Pinto and Sergeant Sloan make no mention of Robinson resisting arrest, being violent or being considered for arrest at any time for assault on a police officer (APO). Plaintiff Ex. #1 MPD IAD Investigation. | Regardless of whether Robinson disputes resisting, the internal investigation concluded that Robinson failed to identify himself as an officer before stating he had a weapon, used excessive profanity, and was found to have engaged in misconduct for doing so. |
| 43. | Robinson, however, testified that he did not resist.  Robinson Dep. at 79:2-79:9. | Admitted. | |
| 44. | While the officers were putting both handcuffs on Robinson, Robinson stated that he was a MPD officer.  Clifford Dep. at 87:7-87:14, 88:21-89:10; Pinto Dep. at 85:2-85:7. | Admitted However Robinson testifies that he told them that as soon as they asked him was he armed. Robinson told the officers he had gun, badge and credentials and he was MPD, and then the officers jumped him Robinson Dep. at 66:10-18; 47:17-49:11; 73:3-22. | Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer.  Robinson Dep. at 201:12-202:3, 214:1-214:5.  This is consistent with the internal investigation.  *See* Defs.' Ex. 4. |
| 45. | Because it was not apparent that Robinson was actually a MPD officer and he had stated he had a weapon, Clifford and Roe proceeded to put the handcuffs on Robinson | Denied Robinson told the officers he had gun, badge and credentials and he was MPD, and then the officers jumped him Robinson Dep. 66:10-18; Robinson Dep. at | Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer.  Robinson Dep. at 201:12- |

|  | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
|  | for their safety.  Clifford Dep. at 87:7-87:14. | 47:17-49:11; 73:3-22 | 202:3, 214:1-214:5.  This is consistent with the internal investigation.  *See* Defs.' Ex. 4. |
| 46. | Pinto also assisted in detaining Robinson.  Clifford Dep. at 75:8-75:12; Pinto Dep. at 55:19-56:1. | Admitted. |  |
| 47. | Pinto testified that he had contact with Robinson's shoulder or back for a couple of seconds.  Pinto Dep. at 77:21-78:2. | Admitted. |  |
| 48. | Clifford recalled that the time to place Robinson in handcuffs from the time Robinson said he had a weapon took less than a minute.  Clifford Dep. at 93:14-93:18; *see also* Robinson Dep. at 78:2-78:6, 118:3-118:11 (testifying that the encounter lasted under a minute). | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. | The time it took to place Robinson in handcuffs is relevant to Plaintiff's assault and battery claim, and Plaintiff's claim for damages. |
| 49. | Robinson testified that the time it took Clifford and Roe to put Robinson in handcuffs was no longer than necessary.  Robinson Dep. at 227:18-228:3; *see also* Pinto Dep. at 85:18-86:1 (testifying that Clifford and Roe used the appropriate amount of force to place Robinson in handcuffs). | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. Plaintiff's position is that any force whatsoever was not lawful. | The time it took to place Robinson in handcuffs is relevant to Plaintiff's assault and battery claim, and Plaintiff's claim for damages. |

|     | Defendants' Fact | Plaintiff's Response | Explanation |
| --- | --- | --- | --- |
| 50. | Officer Pinto testified that during the interaction with detaining Robinson he believed his safety was in danger.  Pinto Dep. at 79:1-79:11. | Denied. Witness Marquette Austin tells IAD that officer Robinson announced he was an officer before he told MPD he was armed, and in his opinion, was not resisting. Plaintiff Ex. #1 at pg. 12. | Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer.  Robinson Dep. at 201:12-202:3, 214:1-214:5.  This is consistent with the internal investigation.  *See* Defs.' Ex. 4. |
| 51. | Robinson recalled that one of the officers placed a knee on his neck for under 10 seconds.  Robinson Dep. at 75:17-75:18, 110:9-110:14. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. Plaintiff's position is that any force whatsoever was not lawful. | This fact is material to Plaintiff's claims of excessive force and to his claim for damages. |
| 52. | Robinson believed that Roe was the officer who placed his knee on his neck.  Robinson Dep. at 77:11-77:15. | Denied. The record cited by defense is unclear as to who actually placed a knee in Mr. Robinson's back. | Roe and Clifford were the officers who first restrained Robinson.  Clifford Dep. at 86:18-87:6.  Pinto was engaged with Plaintiff's brother.  Pinto Dep. at 28:20-29:8.  Robinson believed that Clifford's name was Pinto and testified that the officer not named Pinto (*i.e.*, Roe) placed his knee on his neck. |
| 53. | Clifford testified that he did not recall any officer placing a knee on Robinson's neck. | Admitted. However, this is not a material fact within the context of a motion for | This fact is relevant to Plaintiff's assault and battery claim, and |

|  | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
|  | Clifford Dep. at 120:12-120:16. | summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. Clifford claims he did not see it, but Plaintiff testifies it occurred. | Plaintiff's claim for damages. |
| 54. | After Robinson was placed in handcuffs, Roe removed Robinson's weapon.  Clifford Dep. at 87:15-87:20. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. | The removal of Plaintiff's weapon is relevant to rendering the scene safe and determining whether Plaintiff was actually a MPD officer. |
| 55. | Robinson again stated that he was MPD and had his badge and credentials on him. Clifford Dep. at 87:21-88:9. | Admitted. |  |
| 56. | Clifford testified that from the outset of the encounter Robinson should have either displayed the universal sign to the on-duty officers that he was an officer or should have immediately advised them that he was an officer before saying anything else.  Clifford Dep. at 92:3-92:10. | Denied. Robinson told the officers he had gun, badge and credentials and he was MPD, and then the officers jumped him Robinson Dep. 66:10-18; Robinson Dep. at 47:17-49:11 | Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer.  Robinson Dep. at 201:12-202:3, 214:1-214:5.  This is consistent with the internal investigation.  *See* Defs.' Ex. 4. |
| 57. | During his deposition, Robinson acknowledged that the first statement an off-duty officer should tell an on-duty officer when confronted is that he is a MPD officer. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect | This fact is material because it provides another example of how Robinson did not conduct himself |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| | Robinson Dep. at 17:1-17:13. | whatsoever on the outcome of the litigation of the motion. | properly during the incident. |
| 58. | Robinson acknowledged that in certain circumstances it may be reasonable to restrain an individual who informed an on-duty officer that he had a weapon.  Robinson Dep. at 37:19-38:4. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. Robinson contends his restraint was unlawful. | The fact is material because it shows Robinson understood that in certain circumstances it would be appropriate to act as the Defendant Officers acted. |
| 59. | Robinson also acknowledged that when an officer encounters someone with a weapon, then that is a dangerous situation and the officer may take measures to protect himself. Robinson Dep. at 171:22-172:8. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. | The fact is material because it shows Robinson understood that in certain circumstances it would be appropriate to act as the Defendant Officers acted. |
| 60. | Robinson testified that an on-duty officer could be in a dangerous situation when that officer confronts an individual who says he has a weapon and the officer is unsure whether he is actually a MPD officer. Robinson Dep. at 235:19-236:22. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. | The fact is material because it shows Robinson understood that in certain circumstances it would be appropriate to act as the Defendant Officers acted. |
| 61. | Clifford positioned Robinson on the retaining wall and the officers called their supervisors to the scene.  Clifford Dep. at | Admitted. | |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| | 88:2-88:9. | | |
| 62. | The officers called their supervisors because this is the protocol involving interactions with off-duty officers. Pinto Dep. at 59:5-59:15. | Denied: Plaintiff claims they called supervisors because they had "messed up" or made an error. Robinson Dep. at 83: 1-22. | Regardless of Robinson's self-serving testimony, the internal investigation determined that the Defendant Officers' actions were justified and Robinson had engaged in misconduct. *See* Defs.' Ex. 4.  Moreover, the officers called their supervisors to determine how to handle Robinson's detention.  Clifford Dep. at 95:2-95:11. |
| 63. | After Robinson was handcuffed and the threat of Robinson having a gun was no longer an issue, the officers found Robinson's credentials.  Clifford Dep. at 91:19-93:2. | Denied. After the officers decided to listen to Mr. Robinson they found his credentials. Robinson Dep. at 78:1-80:9. | Plaintiff's statement does not make sense nor does it render this fact in dispute.  Further, the testimony to which Plaintiff cites does not undermine Clifford's testimony. |
| 64. | Clifford and Pinto recalled that Robinson remained in handcuffs for approximately up to 30 minutes.  Clifford Dep. at 88:10-88:15; Pinto Dep. at 64:17-64:22. | Denied. Plaintiff claims he was detained for over an hour. Robinson Dep. at 83:9-83:13; 264: 9-20. Sergeant Sloan says Robinson was in handcuffs for at least 20 minutes after he arrived. Plaintiff Ex. #1. Pg. 12. | Whether there is a dispute regarding the length of time Plaintiff was detained is irrelevant.  The undisputed and material fact is that Robinson was detained until the officers' supervisors made a determination regarding how to handle Robinson's detention. |
| 65. | Robinson recalled that he was in handcuffs for over an hour.  Robinson Dep. at 83:9- | Admitted. | |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| | 83:13. | | |
| 66. | Clifford testified that Robinson remained in handcuffs until their supervisors arrived because they were determining whether Robinson would be arrested for hindering. Clifford Dep. at 95:2-95:11. | Robinson: Denied. Clifford's MPD Internal Affairs interviews are void of such explanations. Plaintiff contends this is a newly discovered excuse as to why he detained Plaintiff Robinson far beyond the time for an investigatory stop and unnecessary arrested Plaintiff after making a determination as to whether there was a crime being committed. Clifford admits he has a variety of illegal reasons for continuing to detain Plaintiff Robinson, ranging from his angst that Robinson violated MPD code of conduct between onduty and off duty officers to Clifford's wholly unacceptable excuse of continuing to detain Robinson because if Robinson was a civilian he would have been arrested for a felony. Clifford Dep. at 96:1-103:22. The MPD Internal Affairs Division Investigation explicitly exonerates Robinson from any criminal misconduct. IAD Findings further declare that sitting on the fringe of an abandoned property is not against the law and that the steps and sidewalk are considered pubic property. Plaintiff Ex. #1 at page 16-17 Clifford is | Whether Plaintiff was cleared from "criminal misconduct" or whether the internal investigation stated that Robinson was not engaged in criminal activity is irrelevant.  Based on the totality of the circumstances, the officers had reasonable suspicion that Robinson may have committed unlawful entry or attempted to commit unlawful entry.  Clifford Dep. at 62:1-63:7; Pinto Dep. at 43:14-43:21. Further, the internal investigation concluded that Robinson engaged in misconduct by not informing the officers that he was a MPD officer prior to informing them that he had a weapon and by using excessive profanity toward the officers. |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| | | staunchly disputed as to his hindering contention. In their IAD investigations, Clifford, Pinto and Sergeant Sloan make no mention of Robinson resisting arrest, being violent or being considered for arrest at any time for assault on a police officer (APO). Plaintiff Ex. #1 MPD IAD Investigation. Witness Marquette Austin tells IAD that officer Robinson announced he was an officer before he told MPD he was armed, and in his opinion, was not resisting. Plaintiff Ex. #1 at pg. 12. | |
| 67. | Clifford testified that if Robinson was a civilian he would have been arrested for hindering.  Clifford Dep. at 98:11-98:18, 101:19-103:8. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. The MPD Internal Affairs Division Investigation explicitly exonerates Robinson from any criminal misconduct. IAD Findings further declare that sitting on the fringe of an abandoned property is not against the law and that the steps and sidewalk are considered pubic property. Plaintiff Ex. #1 at page 16-17. Clifford is staunchly disputed as to his hindering contention. In their IAD investigations, | Whether Plaintiff was cleared from "criminal misconduct" or whether the internal investigation stated that Robinson was not engaged in criminal activity is irrelevant.  Based on the totality of the circumstances, the officers had reasonable suspicion that Robinson may have committed unlawful entry or attempted to commit unlawful entry.  Clifford Dep. at 62:1-63:7; Pinto Dep. at 43:14-43:21. Further, the internal investigation concluded that Robinson engaged in misconduct by not informing the officers that he was a MPD officer |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| | | Clifford, Pinto and Sergeant Sloan make no mention of Robinson resisting arrest, being violent or being considered for arrest at any time for assault on a police officer (APO). Plaintiff Ex. #1 MPD IAD Investigation. | prior to informing them that he had a weapon and by using excessive profanity toward the officers. |
| 68. | The officers' supervisors arrived at the scene and determined that they would handle the situation administratively rather than arrest Robinson.  Clifford Dep. at 88:14-88:20, 103:9-103:19. | Denied The officers released Mr. Robinson because he had committed no crime. Robinson Dep. at 73:3-22. | The testimony to which Plaintiff cites does not support his position that this fact is in dispute.  The Defendant Officers submitted a complaint involving the situation and Robinson was deemed to have engaged in misconduct. |
| 69. | At no time was Robinson arrested.  Clifford Dep. at 106:21-107:1; Robinson Dep. at 114:10-114:16. | Denied. Defendants arrested Plaintiff when they held him against his will for over an hour without legal justification to do so, which is an unconstitutional arrest. Robinson Dep. at 83:9-83:13; 264: 9-20 | Based on his knowledge of a former MPD officer, Robinson explicitly testified that he was not arrested. Plaintiff's testimony regarding the time he recalled spending in handcuffs does not undermine this admission. |
| 70. | Clifford testified that when officers perform a stop they take security precautions to ensure the individual they are investigating cannot harm the officers.  Clifford Dep. at 77:12-77:17. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. | This fact is material because it relates to the detention of Plaintiff in order to render the scene safe. |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| 71. | While a candidate to be a police officer is in the police academy, the candidates are instructed that an on-duty officer is in control of a situation involving an off-duty officer. The candidates are also taught the universal sign to inform on-duty officers that they are police officers.  Clifford Dep. at 123:21-124:21; Pinto Dep. at 82:6-82:18. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. | This fact is material because it relates to the fact that Robinson did not act appropriately when confronted by the Defendant Officers. |
| 72. | Robinson acknowledged that the on-duty officer should be in charge when confronting an off-duty officer.  Robinson Dep. at 219:2-219:11. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. This ambiguous MPD custom does not supersede Plaintiff's 4th Amendment rights to be free from unreasonable detention and excessive force | This fact is material because it relates to the fact that Robinson did not act appropriately when confronted by the Defendant Officers. |
| 73. | Based on Robinson's behavior when Clifford first approached him, Clifford did not think Robinson was a police officer.  Clifford Dep. at 125:6-125:18. | Denied. Robinson told the officers he had gun, badge and credentials and he was MPD, and then the officers jumped him Robinson Dep. 66:10-18; Robinson Dep. at 47:17-49:11 | The testimony to which Plaintiff cites does not undermine Clifford's testimony.  The internal investigation concluded that Robinson engaged in misconduct by not informing the officers that he was a MPD officer prior to informing them that he had a weapon and by using excessive profanity toward the officers.  This |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| | | | substantiates Clifford testimony that Robinson was not acting like a police officer. |
| 74. | After Robinson was detained he told Clifford that "he [Robinson] f*cked up" and asked Clifford if there was anything the officers could do to work out the situation.  Clifford Dep. at 127:11-127:22; *see also* Pinto Dep. at 83:8-84:6. | Denied. There is no verification of this statement via Plaintiff's deposition or discovery submissions. | Plaintiff's objection does not make sense.  Clifford provided testimony based upon Robinson's admission at the scene of the incident. |
| 75. | Pinto issued Robinson's brother a ticket for illegal parking and a window tint violation.  Pinto Dep. at 20:17-21:9. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. | This fact is material because it demonstrates that the officers were responsible in carrying out other actions on the scene that day and that no allegations of misconduct resulted from the arrest of Plaintiff's brother. |
| 76. | Robinson's brother was arrested for a suspended license.  Robinson Dep. at 93:3-93:15; Pinto Dep. at 21:3-21:4. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. Pinto also admits that traffic stops are not the responsibility of the unmarked GRU and that arresting a person is the only way to get to main objective which is to search the vehicle or person for | This fact is material because it demonstrates that the officers were responsible in carrying out other actions on the scene that day and that no allegations of misconduct resulted from the arrest of Plaintiff's brother. |

| | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
| | | guns. The arrest of a person for a traffic violation is discretionary Pinto Dep. at 38:1-42:21. | |
| 77. | Immediately following the incident, Clifford, Pinto, and Roe drove to Internal Affairs and made statements regarding the incident. Clifford Dep. at 110:18-111:9. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. Notably, neither man is recorded as having made any mention of the so-called hindering charge they were holding Robinson for over an hour. | The fact that the Defendant Officers reported the incident is material to this case.  The fact that Robinson was found to have engaged in misconduct is clearly material.  Robinson's misconduct is relevant as to how the Defendant Officers handled the situation.  Whether any officer reported that Robinson resisted detention or whether that fact was contained in the report is irrelevant. |
| 78. | The day after the incident, Robinson sought treatment for a muscle strain.  Robinson Dep. at 119:17-120:8. | Admitted. | |
| 79. | During the Internal Affairs investigation, Robinson was placed on non-contact duty. Robinson Dep. at 135:19-137:17. | Admitted. The MPD Internal Affairs Division Investigation explicitly exonerates Robinson from any criminal misconduct. IAD Findings further declare that sitting on the fringe of an abandoned property is not against the law and that the steps and sidewalk are considered pubic property. Plaintiff Ex. #1 at page 16-17 | The fact that Robinson was found to have engaged in misconduct is clearly material.  Robinson's misconduct is relevant to how the Defendant Officers handled the situation. |

|    | Defendants' Fact | Plaintiff's Response | Explanation |
|----|------------------|---------------------|-------------|
| 80. | In 2014, the Assistant Chief of Police determined that Robinson engaged in misconduct for failing to identify himself as a MPD officer prior to advising on-duty officers that he had a weapon and for using profanity toward on-duty police officers. *See* Exhibit 4. | Admitted. Also, the MPD Internal Affairs Division Investigation explicitly exonerates Robinson from any criminal misconduct. IAD Findings further declare that sitting on the fringe of an abandoned property is not against the law and that the steps and sidewalk are considered pubic property. Plaintiff Ex. #1 at page 16-17. | The fact that Robinson was found to have engaged in misconduct is clearly material.  Robinson's misconduct is relevant to how the Defendant Officers handled the situation. |
| 81. | Later in 2014, MPD determined that Clifford, Pinto, and Roe engaged in a justified use of force during the incident with Robinson.  *See* Final Investigation Regarding the Allegation of Excessive Force by Officers Scott Pinto, Maurice Clifford and Ryan Roe, attached as Exhibit 5. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. The MPD Internal Affairs Division Investigation explicitly exonerates Robinson from any criminal misconduct. IAD Findings further declare that sitting on the fringe of an abandoned property is not against the law and that the steps and sidewalk are considered pubic property. Plaintiff Ex. #1 at page 16-17. The two conclusions contradict each other. If no law was being violated, then force was not warranted. | The fact that MPD determined that the officers were justified in their actions involving Robinson is clearly material to whether they acted appropriately in the course of their duties |
| 82. | In March 2014, Robinson was indicted for fleeing from MPD officers.  Robinson Dep. | Admitted. However, this is not a material fact within the context of a motion for | Plaintiff's testimony that he did not engage in misconduct in March 2014 |

|  | Defendants' Fact | Plaintiff's Response | Explanation |
|---|---|---|---|
|  | at 188:22-190:2. | summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. Moreover, it is inadmissible evidence. | but was ultimately terminated as a result of the misconduct in January 2016 is material and relevant to the veracity of Plaintiff's statements relating to the incident in November 2013. |
| 83. | Robinson was put on non-contact duty and eventually terminated from MPD in January 2016 as a result.  Robinson Dep. at 190:4-191:4; *see also* Robinson Dep. at 9:15-9:16. | Admitted. However, this is not a material fact within the context of a motion for summary judgment. Were this fact to be proven, it would have absolutely no affect whatsoever on the outcome of the litigation of the motion. Moreover, it is inadmissible evidence. | Plaintiff's status with MPD is material. |
| 84. | Robinson testified that he does not have any evidence that the District should have known that Pinto or Clifford had allegedly been conducting illegal searches and seizures, detainments, or arrests.  Robinson Dep. at 238:20-239:6, 239:21-240:12. | Denied. Plaintiff is not an attorney and is not required to know Federal Litigation causes of action nor is he required to know U.S.C. 42 Sec. 1983 Failure to Train and Supervise Litigation. However, Plaintiff did testify he has knowledge that MPD engages in racial profiling, which consists of any of the Defendants named causes of action in Defendants' Undisputed Fact #84, when directed exclusively at African-Americans. See Robinson Dep. at 155-185. | The fact that Plaintiff is not an attorney is irrelevant.  Robinson's self-serving testimony that he heard about isolated incidents of "racial profiling" (but that he could not attribute to any particular individual or provide specific details regarding what he heard) is irrelevant to this case. Plaintiff has not submitted any evidence that Pinto or Clifford engaged in any illegal conduct. |