# **EXHIBIT C**

**Defendants' Response to Plaintiff's Statement of Material Facts**

|   | **Plaintiff's Fact** | **Defendants' Response** |
|---|---|---|
| 1. | Plaintiff Jamal Robinson joined the Metropolitan Police Department ("MPD") in April 2012. Robinson Dep. at 9:13-9:14. | Undisputed. |
| 2. | Officer Maurice Clifford joined MPD in 2002. Clifford Dep. at 17:21-18:5, Clifford worked for the Gun Recovery Unit ("GRU") from 2011 to 2015. Clifford Dep. at 18:12- 18:15. (Def. Ex. #2) Detective Scott Pinto joined MPD in 2002. Pinto Dep. at 7:4-7:18, Def. Exhibit 3 | Undisputed |
| 3. | On November 6, 2013, at approximately 6:20 pm Plaintiff was sitting on a low wall talking to his brother, who was seated in a parked vehicle a short distance away, at the address 5517 C Street SE, Washington D.C. | Defendants object to this fact as not supported by any evidence. Defendants do not dispute that Plaintiff was on the block of 5500 C Street, S.E. on November 6, 2016. |
| 4. | Mr. Robinson lives there and regularly waits there before he leaves to pick up his daughter. | Defendants object to this fact as not supported by any evidence. |
| 5. | 5517 C Street SE is a neat vacant house that was not occupied at the time. It has a lawn that is easily accessible to the public, no fence and it had a no trespass sign behind iron screen drawer at the time of incident. | Defendants object to this fact as not supported by any evidence. |

|    | **Plaintiff's Fact** | **Defendants' Response** |
|----|----------------------|--------------------------|
| 6. | Officers Clifford, Pinto, and Ryan Roe were on patrol in the 5500 black of C st SE When they spotted Plaintiff Robinson and his brother. Clifford Dep. at 54:2-54:5, 55:1-55:2. Pinto Dep. at 34:16-34:20. | Undisputed. |
| 7. | Plaintiff and his brother were not engaging in any illegal or unreasonably suspicious activity. There were no calls from neighbors or complaints called into MPD in reference to Plaintiff or his brother. As they were talking, an unmarked truck drove up and rolled down the window. | Defendants object to this fact as not supported by any evidence. Defendants dispute this fact to the extent that Plaintiff suggests the Defendant Officers did not have reasonable suspicion to stop Robinson. |
| 8. | Then, Officers Pinto, Clifford and Rowe exited the vehicle and approached Plaintiff | Defendants object to this fact as not supported by any evidence. Based on the totality of the circumstances, the officers had reasonable suspicion that Robinson may have committed unlawful entry or attempted to commit unlawful entry. Clifford Dep. at 62:1-63:7; Pinto Dep. at 43:14-43:21. |
| 9. | The Officers immediately ordered Plaintiff Robinson to stand up and approached Plaintiff and demanded to search him and asked him did he have any weapons. Plaintiff responded affirmatively, that he was MPD, and he had a gun and his MPD badge and that he had his police credentials in his back pocket. Robinson Depo. 48:1-22. | Disputed. Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer. Robinson Dep. at 201:12-202:3, 214:1-214:5. This is consistent with the internal investigation. *See* Defs.' Ex. 4. |
| 10. | Pinto proceeded to address the driver of the vehicle. Clifford Dep. at 75:14-76:6; Pinto Dep. at 28:20-29:8. | Undisputed. |
| 11. | Plaintiff Robinson testifies that the first and sole questions the defendant officers asked him were ones demanding to | Disputed. Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer. |

|     | **Plaintiff's Fact** | **Defendants' Response** |
| --- | --- | --- |
|     | search him. When he rightfully refused and was asked was he armed, Robinson explained that he was MPD and was armed and was immediately tackled by the officers. Robinson 47:17-49:11 see also 65:17-67:10 | Robinson Dep. at 201:12-202:3, 214:1-214:5. This is consistent with the internal investigation. *See* Defs.' Ex. 4. Further, Pinto asked Robinson whether he lived on the property and Robinson responded that he did not. Clifford Dep. at 57:6-57:15; Pinto 17:22-18:6. Clifford asked whether Robinson lived there and Robinson stated that he did not but that he lived on the block. Clifford Dep. at 85:7-85:21. |
| 12. | Immediately, the officers Clifford and Rowe seized Plaintiff, tackled Plaintiff to the ground, subdued him and attempted to handcuff him. Plaintiff continued to express that he was a Metropolitan Police Officer to no avail. | Defendants object to this fact as not supported by any evidence. Disputed. Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer. Robinson Dep. at 201:12-202:3, 214:1-214:5. This is consistent with the internal investigation. *See* Defs.' Ex. 4. The officers detained Robinson because he said he had a weapon. Pinto Dep. at 56:20-57:7. Clifford testified that Robinson began to resist Clifford and Clifford rolled Robinson over onto his stomach, and Officer Roe assisted Clifford in putting handcuffs on Robinson. Clifford Dep. at 86:18-87:6. Clifford testified that he placed Robinson in an "arm bar" and grabbed one of Robinson's arms to place a handcuff on him. Because Robinson was resisting, Roe grabbed Robinson's other arm to place the other handcuff on him. Clifford Dep. at 91:3-91:14; 108:14-109:14. While the officers were putting both handcuffs on Robinson, Robinson stated that he was a MPD officer. Clifford Dep. at 87:7-87:14, 88:21-89:10; Pinto Dep. at 85:2-85:7. Because it was not apparent that Robinson was actually a MPD officer and he had stated he had a weapon, Clifford and Roe proceeded to put the handcuffs on Robinson for their safety. |

|     | **Plaintiff's Fact** | **Defendants' Response** |
| --- | --- | --- |
|     |     | Clifford Dep. at 87:7-87:14. |
| 13. | Pinto also assisted in detaining Robinson. Clifford Dep. at 75:8-75:12; Pinto Dep. at 55:19- 56:1 | Undisputed. |
| 14. | One of the officers proceeded to put his knee into Plaintiffs neck. Plaintiff did not physically resist at any point.. Robinson Dep. at 79:2-79:9. Robinson Dep. at 75:17-75:18, 110:9-110:14. | Disputed. Clifford testified that he did not recall any officer placing a knee on Robinson's neck. Clifford Dep. at 120:12-120:16. |
| 15. | Plaintiff, Officer Robinson, repeatedly informed them that that he was a Metropolitan Police Officer and that his credentials were in his back pocket. Officers retrieved his wallet from his pocket and Plaintiff's MPD credentials. | Defendants object to this fact as not supported by any evidence. Defendants do not dispute that while the officers were putting both handcuffs on Robinson, Robinson stated that he was a MPD officer. Clifford Dep. at 87:7-87:14, 88:21-89:10; Pinto Dep. at 85:2-85:7. Defendants do not dispute that after Robinson was placed in handcuffs, Roe removed Robinson's weapon. Clifford Dep. at 87:15-87:20. Defendants do not dispute that after Robinson was handcuffed and the threat of Robinson having a gun was no longer an issue, the officers found Robinson's credentials. Clifford Dep. at 91:19-93:2. Defendants dispute Plaintiff's characterization that he "repeatedly informed them that he was a Metropolitan Police Officer." |
| 16. | Plaintiff was still subdued, handcuffed and detained for over an hour . The public subduing and extensive detainment was of great humiliation and embarrassment to Plaintiff.. Robinson recalled that he was in handcuffs for over an hour. Robinson Dep. at 83:9-83:13. | Disputed as to the length of time Plaintiff was detained and as to any humiliation or embarrassment Plaintiff may have experienced. Clifford and Pinto recalled that Robinson remained in handcuffs for approximately up to 30 minutes. Clifford Dep. at 88:10-88:15; Pinto Dep. at 64:17-64:22. Clifford testified that Robinson remained in handcuffs until their supervisors arrived because they |

|     | **Plaintiff's Fact** | **Defendants' Response** |
| --- | --- | --- |
|     |     | were determining whether Robinson would be arrested for hindering. Clifford Dep. at 95:2-95:11. Whether there is a dispute regarding the length of time Plaintiff was detained is irrelevant. The undisputed and material fact is that Robinson was detained until the officers' supervisors made a determination regarding how to handle Robinson's detention. |
| 17. | Throughout the ordeal, to no avail, Plaintiff expressed his legal rights to the Officers not to be subject to such harsh and illegal treatment. Plaintiff requested Internal Affairs to come to the scene. | Defendants object to this fact as not supported by any evidence. Defendants dispute the statement Plaintiff claims he made to the officers involved at the scene. Defendants also dispute that Plaintiff requested that internal affairs come to the scene. Clifford positioned Robinson on the retaining wall and the officers called their supervisors to the scene. Clifford Dep. at 88:2-88:9. The officers called their supervisors because this is the protocol involving interactions with off-duty officers. Pinto Dep. at 59:5-59:15. |
| 18. | The Officers did in fact seize Plaintiffs MPD issued weapon. | Defendants object to this fact as not supported by any evidence. Defendants do not dispute that after Robinson was placed in handcuffs, Roe removed Robinson's weapon. Clifford Dep. at 87:15-87:20. |
| 19. | Witness Marquette Austin tells IAD that officer Robinson announced he was an officer before he told MPD he was armed, and in his opinion, was not resisting.. Plaintiff Ex. #1 at pg 12. | Defendants object to this fact as not supported by any evidence. Disputed. Plaintiff did not attach "Plaintiff Ex. #1" to his opposition. Regardless, Austin's statement is inconsistent with Robinson's own admissions and the conclusion of the internal investigation. |

|     | **Plaintiff's Fact** | **Defendants' Response** |
| --- | --- | --- |
| 20. | After more than an hour, Internal Affairs showed up and Plaintiff was not charged with any offense and was released. Plaintiffs MPD issued weapon was returned to him. The officers released Mr. Robinson because he had committed no crime. Robinson Dep. at 73:3-22. | Disputed as to the length of time Plaintiff was detained. Clifford and Pinto recalled that Robinson remained in handcuffs for approximately up to 30 minutes. Clifford Dep. at 88:10-88:15; Pinto Dep. at 64:17-64:22. Clifford testified that Robinson remained in handcuffs until their supervisors arrived because they were determining whether Robinson would be arrested for hindering. Clifford Dep. at 95:2-95:11. Whether there is a dispute regarding the length of time Plaintiff was detained is irrelevant. The undisputed and material fact is that Robinson was detained until the officers' supervisors made a determination regarding how to handle Robinson's detention. The officers' supervisors arrived at the scene and determined that they would handle the situation administratively rather than arrest Robinson. Clifford Dep. at 88:14-88:20, 103:9-103:19. |
| 21. | Plaintiff testifies that Defendant officers lied to him at some point in his roughly one hour arrest about a call being made against him and that being reason for the investigative stop. Robinson Dep. at 242:15-244:1. There was no reasonable suspicion to stop Robinson. Clifford Dep. at 58:1-66:22; 36:1-47:14; 66:1-69:22 | Disputed. Based on the totality of the circumstances, the officers had reasonable suspicion that Robinson may have committed unlawful entry or attempted to commit unlawful entry. Clifford Dep. at 62:1-63:7; Pinto Dep. at 43:14-43:21. Defendants also dispute Robinson's self-serving testimony that an unnamed officer told him that a call was made. |
| 22. | The 6th District and the specific area where Plaintiff was detained is in an area where there are a growing number of complaints from residents against 6th District MPD charging racial targeting, profiling, harassment and violations of Constitutional rights of African- Americans. | Defendants object to this fact as not supported by any evidence. There is no evidence that that Pinto or Clifford engaged in any such conduct at any time. This assertion is irrelevant and immaterial to this case. |

|  | **Plaintiff's Fact** | **Defendants' Response** |
|---|---|---|
| 23. | The defendant officers actual reason for stopping Robinson are in hot dispute between the parties. Plaintiff testifies that the property, or right to be on it, was never, ever mentioned by defendants prior to his detention turned arrest. The officers first and only words were demanding to search Mr. Robinson. You cannot detain a person without a reasonable suspicion that a crime has actually been committed, which did not exist in this case. Robinson, a trained officer, denies any legal reason to stop him for investigation.. Robinson dep. at 116: 7-12 | Defendants object to the assertions to the extent they are unsupported. Defendants object to Plaintiff's legal conclusions relating to the reasonable suspicion standard. Defendants dispute Plaintiff's self-serving statements regarding what was said to Plaintiff, that Plaintiff's detention was an arrest, and that there was no reasonable suspicion to stop Plaintiff. Based on the totality of the circumstances, the officers had reasonable suspicion that Robinson may have committed unlawful entry or attempted to commit unlawful entry. Clifford Dep. at 62:1-63:7; Pinto Dep. at 43:14-43:21. Pinto asked Robinson whether he lived on the property and Robinson responded that he did not. Clifford Dep. at 57:6-57:15; Pinto 17:22-18:6. Clifford asked whether Robinson lived there and Robinson stated that he did not but that he lived on the block. Clifford Dep. at 85:7-85:21. Robinson testified that Clifford asked him to stand up and Robinson replied that he would not stand up to let the officer search him. Robinson Dep. at 65:21-66:9, 199:17-200:1. Robinson acknowledged that he told the officers he had a weapon before telling the officers he was a MPD officer. Robinson Dep. at 201:12-202:3, 214:1-214:5. At no time was Robinson arrested. Clifford Dep. at 106:21-107:1; Robinson Dep. at 114:10-114:16. |
| 24. | Clifford admits he has a variety of illegal reasons for continuing to detain Plaintiff Robinson, ranging from his angst that Robinson violated MPD code of conduct between on-duty and off duty officers to Clifford's wholly unacceptable excuse of continuing to detain Robinson because if Robinson was a civilian he would have been | Disputed and the testimony to which Plaintiff cites does not support Plaintiff's assertion. In his experience, Clifford has conducted arrests of individuals for unlawful entry that began with his observation of an individual sitting on the curtilage of vacant properties with no trespassing signs and has had those cases "papered" in that the cases progressed further in the prosecution |

| | **Plaintiff's Fact** | **Defendants' Response** |
|---|---|---|
| | arrested for a felony. Clifford Dep. at 96:1-103:22. | process after an arrest. Clifford Dep. at 116:1-116:18. Clifford testified that Robinson was on the property by virtue of sitting on the retaining wall of the property. Clifford Dep. at 66:15-66:21. Based on the totality of the circumstances, Clifford had reasonable suspicion that Robinson may have committed unlawful entry or attempted to commit unlawful entry. Clifford Dep. at 62:1-63:7; Pinto Dep. at 43:14-43:21. Based on Robinson's bad attitude, use of profanity, and failure to comply with Clifford's directives, Clifford believed that Robinson may have been engaged in criminal activity. Clifford Dep. at 105:10-105:13. Clifford testified that Robinson began to resist Clifford and Clifford rolled Robinson over onto his stomach, and Officer Roe assisted Clifford in putting handcuffs on Robinson. Clifford Dep. at 86:18-87:6. Because it was not apparent that Robinson was actually a MPD officer and he had stated he had a weapon, Clifford and Roe proceeded to put the handcuffs on Robinson for their safety. Clifford Dep. at 87:7-87:14. Clifford testified that from the outset of the encounter Robinson should have either displayed the universal sign to the on-duty officers that he was an officer or should have immediately advised them that he was an officer before saying anything else. Clifford Dep. at 92:3-92:10. Clifford testified that Robinson remained in handcuffs until their supervisors arrived because they were determining whether Robinson would be arrested for hindering. Clifford Dep. at 95:2-95:11. Clifford testified that if Robinson was a civilian he would have been arrested for hindering. Clifford Dep. at 98:11-98:18, 101:19-103:8. Following an internal investigation, MPD determined that Clifford, Pinto, and Roe |

|     | **Plaintiff's Fact** | **Defendants' Response** |
| --- | --- | --- |
|     |     | engaged in a justified use of force during the incident with Robinson. *See* Defs.' Ex. 5. |
| 25. | Officer Clifford admits that he does not know D.C. Code Sec. 22-302 on Unlawful Entry. Clifford has been stretching the bounds of the law and running afoul of the 4th amendment in his overzealous pursuit to get guns off of the street.. Robinson was not on the property nor even on the curtilage of the property. Clifford Depo. at 58:1-66:22; 36:1-47:14. | Disputed as to Clifford knowledge of the D.C. Code and that he "has been stretching the bounds of the law and running afoul of the 4th [A]mendment." There is no evidence to support this assertion. Disputed as to Robinson not being on the property. On the day of the incident, the officers observed Robinson sitting on the retaining wall of a vacant property with no trespassing signs. Clifford Dep. at 55:17-56:8; Pinto Dep. at 17:10-17:21; Robinson Dep. at 49:18-50:12. Further, Clifford testified that if he observed an individual on a vacant property that displayed no trespassing signs, he would investigate the individual for unlawful entry and determine whether the individual resided there or had a reason to be there. Clifford Dep. at 40:2-40:13, 44:3-44:9; *see also* Pinto Dep. at 43:14-43:21 (testifying that being on the curtilage to a property that has a no trespassing sign could constitute unlawful entry). In his experience, Clifford has conducted arrests of individuals for unlawful entry that began with his observation of an individual sitting on the curtilage of vacant properties with no trespassing signs and has had those cases "papered" in that the cases progressed further in the prosecution process after an arrest. Clifford Dep. at 116:1-116:18. Clifford testified that Robinson was on the property by virtue of sitting on the retaining wall of the property. Clifford Dep. at 66:15-66:21. |
| 26. | In his experience, Clifford has conducted arrests of individuals for unlawful entry that began with his | Undisputed. Defendants further state that Clifford has had those cases "papered" in that the cases progressed further in the |

9

|     | **Plaintiff's Fact** | **Defendants' Response** |
| --- | --- | --- |
|     | observation of an individual sitting on the curtilage of vacant properties with no trespassing . Clifford Dep. at 116:1-116:18. Clifford testified that Robinson was on the property by virtue of sitting on the retaining wall of the property. Clifford Dep. at 66:15-66:21. | prosecution process after an arrest. Clifford Dep. at 116:1-116:18. |
| 27. | Clifford is mistaken on the law without reason and he is clearly untrained. The reason being is that there is no law prohibiting being on the retaining wall of a property while on the public sidewalk. Unfortunately this is a practice and custom for Clifford and GRU. Clifford Dep. 36:1- 47:14; 58:1-66:22 | Disputed.  There is no evidence to support Plaintiff's assertion.  In his experience, Clifford has conducted arrests of individuals for unlawful entry that began with his observation of an individual sitting on the curtilage of vacant properties with no trespassing signs and has had those cases "papered" in that the cases progressed further in the prosecution process after an arrest. Clifford Dep. at 116:1-116:18. |
| 28. | The MPD Internal Affairs Division Investigation explicitly exonerates Robinson from any criminal misconduct. IAD Findings further declare that sitting on the fringe of an abandoned property is not against the law and that the steps and sidewalk are considered pubic property. (Plaintiff Ex. #1 at page 16-17). | Defendants object to this assertion because Plaintiff has not submitted any evidence to support it.  In his experience, Clifford has conducted arrests of individuals for unlawful entry that began with his observation of an individual sitting on the curtilage of vacant properties with no trespassing signs and has had those cases "papered" in that the cases progressed further in the prosecution process after an arrest.  Clifford Dep. at 116:1-116:18.  Even if there was no such law, Clifford conduct was reasonable under the circumstances. |
| 29. | Defendant Clifford, no stranger to controversy, has been to trial as a defendant at trial in an excessive force lawsuit and also testified in another where members of his unit were named defendants. Clifford Dep.at 5:1-8:22. | Defendants object to Plaintiff's mischaracterization that Clifford is "no stranger to controversy."  Defendants further dispute this fact as irrelevant and misleading.  Clifford testified that he was acquitted in a trial relating to claims of excessive force.  Clifford |

| Plaintiff's Fact | Defendants' Response |
|---|---|
| | Dep. at 8:21-9:2.  Whether Clifford testified in as a witness in a case involving a claim by another plaintiff against another GRU officer is irrelevant. |