## COMPLAINANT(S) STATEMENT(S)

**Officer Scott Pinto**                                                  **GRU**

On November 6, 2013, Officer Scott Pinto provided an audio recorded statement to Agent Brad Wagner of the Internal Affairs Division (IAD) and the following is a synopsis of his statement: **(Attachment 3)**

- Officer Pinto stated that he was on-duty with Officers Clifford and Roe conducting gun interdiction in the Sixth District. Officer Pinto stated that he was driving the vehicle, Officer Clifford was seated in the front passenger seat and Officer Roe was seated behind Officer Clifford in the rear passenger seat.

- Officer Pinto stated that as they entered the 5100 block of C Street, Southeast, they observed "No Trespassing" signs in front of 5117 C Street, Southeast. Officer Pinto also stated that an occupied vehicle was illegally parked in front of that location with the engine running and in violation of the window tint laws.

- Officer Pinto stated that he pulled behind the vehicle and activated his emergency lights. Officer Pinto stated that he rolled down the passenger window and observed two (2) males, one (1) which was Officer Robinson, who was dressed in civilian attire and sitting on a retaining wall in front of 5517 C Street, Southeast.

- Officer Pinto asked Officer Robinson and the other male if they lived there, but they both looked at each other in a suspicious manner and did not respond. Officer Pinto again asked Officer Robinson and the other male if they lived there and Officer Robinson replied, "No, you do not know what is going on here" and then appeared as if he was going to run.

- Officer Pinto stated that he exited the MPD vehicle to approach the driver of the vehicle that was parked beside the curb and observed the vehicle's driver talking with Officer Robinson and the other male sitting on the retaining wall.

- Officer Pinto stated that he conducted the traffic stop and Officers Clifford and Roe approached Officer Robinson and the other male.

- Officer Pinto stated that after speaking with the driver for approximately ten (10) seconds, he observed Officers Clifford and Roe scuffling with Officer Robinson. Officer Pinto stated that he heard Officer Robinson tell Officers Clifford and Roe to get off him and he saw him (Officer Robinson) flailing his arms around, while Officer Clifford attempted to handcuff him.

3

- Officer Pinto stated that he told the driver to stay in his vehicle and then he went to assist Officers Clifford and Roe. Officer Pinto stated that he heard Officer Robinson say, "You are not touching my gun."

- Officer Pinto later stated that once he heard Officer Robinson, he immediately assisted Officers Clifford and Roe to handcuff Officer Robinson and he observed Officer Robinson's service pistol in a holster. Officer Pinto stated that Officer Robinson then said that he was a MPD Officer.

- Officer Pinto stated that they unzipped Officer Robinson's jacket, but Officer Robinson told them several times that they were not taking his gun. Officer Pinto stated that Officer Roe removed Officer Robinson's service pistol from the holster and Officer Robinson replied, "You fucked up now, I'm going to sue you. That's what I do."

- Officer Pinto stated that he immediately notified Sergeant Curt Sloan via police radio and requested him to respond to the scene. Officer Pinto stated that they stood by with Officer Robinson, who was still handcuffed until Sergeant Sloan arrived on the scene.

- Officer Pinto stated that Officer Jeremy Sharpton reported to him that Officer Robinson stated, "I know I fucked up. My brothers got into a fight. I did not want to have to lock one (1) of them up and that is why I am in a bad mood."

- Officer Pinto stated that Officer Robinson appeared to be very "cocky" while on the scene.

- Officer Pinto later added that they initially handcuffed Officer Robinson because Officer Robinson was wearing a puffy jacket while sitting back with his arms crossed while inside of his jacket.

- Officer Pinto reported that Officer Clifford told Officer Robinson that he needed to see his hands and asked him to stand up, but Officer Robinson replied, I'm not standing up." Officer Pinto stated that Officer Clifford told Officer Robinson that he needed to stand so he could frisk him, but Officer Robinson replied, "No and stood up."

- Officer Pinto later stated that Officer Clifford told him that Officer Robinson had a heavy jacket on, showed the felony yarn and showed the characteristics of being very suspicious. Officer Pinto explained that the area was a high drug and crime area.[2]

---

[2] A query from the Office of Unified Communications indicated that there were twenty-two (22) calls for service in the 5500 block of C Street Southeast between 05/01/2013 and 11/07/2013.

4

- Officer Pinto stated that the driver of the vehicle was arrested for No Permit.

- Officer Pinto stated that Officer Clifford initially made first contact with Officer Robinson.

- Officer Pinto later stated that he initially dealt with the driver of the vehicle until Officer Robinson pulled away. Officer Clifford placed Officer Robinson's hands behind his back and added that he (Officer Pinto), Officers Clifford and Roe attempted to handcuff him.

- Officer Pinto stated that Officer Robinson flailed his arms, preventing Officer Clifford from handcuffing him.

- When asked, Officer Pinto stated that Officers Clifford and Roe contacted Officer Robinson because he was wearing a jacket and they felt that Officer Robinson could be armed and they wanted to conduct a protective pat down. Officer Pinto also stated that Officer Robinson was uncooperative.

- Officer Pinto stated that Officer Clifford asked Officer Robinson if he had a weapon on him and Officer Robinson replied in a cocky manner, "yeah" at which time, Officer Clifford turned Officer Robinson around to handcuff him.

- When asked, Officer Pinto indicated that Officer Robinson stated that he had a gun on him before he stated that he was a police officer. He stated that Officer Robinson did not identify himself as a police officer until they were ready to handcuff him.

- Officer Pinto stated that Officer Robinson told them to get off his gun.

- Officer Pinto later stated that he rushed to get Officer Robinson handcuffed after hearing him say he had a gun. Officer Pinto stated that after hearing him confirm that he had a gun, they immediately attempted to handcuff Officer Robinson and that is when Officer Pinto heard Officer Robinson say that he was a MPD Officer.

- Officer Pinto stated that Officer Robinson was carrying his service pistol in an issued MPD holster, but not the administrative holster.

- Officer Pinto stated that Officer Robinson said, "Fuck" a few times and, "I am going to sue you." Officer Pinto stated that neither he, Officer Clifford nor Officer Roe used profanity during their encounter with Officer Robinson.

5

- Officer Pinto stated that Officer Robinson should have identified himself as a MPD Officer immediately and that he (Officer Robinson) did not have any MPD identifiers on his person that he could see.

- Officer Pinto stated that Officer Robinson should have identified himself because they did not need a friendly fire incident. Officer Pinto stated that he thought that Officer Robinson was unprofessional and he put himself in a dangerous situation.

**Officer Maurice Clifford**                                                          **GRU**

On November 6, 2013, Officer Maurice Clifford provided an audio recorded statement to Agent John Hendrick of the IAD. The following is a synopsis of his statement: (**Attachment 4**)

- Officer Clifford stated that he along with Officers Pinto and Roe were in the 5500 block of C Street, Southeast, operating a gray Ford Explorer with tinted windows and Florida tags.

- Officer Clifford stated that as they approached 5517 C Street, Southeast, they observed two (2) subjects[3] seated on a retainer wall in front of that location. Officer Clifford stated that he also observed that the residence appeared to be vacant and it had, "No Trespassing" and "Private Property" signs posted.

- Officer Clifford stated that Officer Pinto stopped the vehicle, pulled within about ten (10) to fifteen (15) feet of them, rolled the window down and asked them if they lived there. Officer Clifford again asked the male if he lived there and he said, "No."

- Officer Clifford stated that Officer Pinto asked Officer Robinson if he lived there and he said, "No," but that he lived in the block.

- Officer Clifford stated that he and Officers Pinto and Roe exited the vehicle to conduct a contact on Officer Robinson and the other male. Officer Clifford stated that once he opened his car door, Officer Robinson quickly stood up as if he was about to run.

- Officer Clifford stated that he told Officer Robinson to stop and Officer Robinson asked him, who he was talking to and Officer Clifford advised Officer Robinson that he was talking to him. Officer Robinson replied, "I know you are not talking to me like that" and Officer Clifford stated, "Yes, I am talking to you."

---

[3] One of the subjects was Officer Robinson.

- Officer Clifford stated that based on his observations of Officer Robinson by getting up quickly and sitting back down and putting his hands in his jacket, he (Officer Clifford) moved in to close the distance on him in case he had to engage in a pursuit.

- Officer Clifford stated that he did not use any derogatory language or unprofessional words towards Officer Robinson, but he thought that Officer Robinson was being, " ignorant" and had attitude.

- Officer Clifford indicated that he was wearing a shirt with the words, "POLICE" on the sleeves, a tactical vest with the word "POLICE" on the front and back and his MPD badge was affixed. Officer Clifford stated that Officer Roe was attired the same as he was, but with a black vest with yellow writing that said "POLICE" on the front and back. Officer Clifford stated that Officer Pinto was wearing a black and white vest.

- Officer Clifford later stated that Officer Robinson jumped up, and at that point he walked up to him and said stop. Officer Clifford stated that Officer Robinson asked him who he was talking to and Officer Clifford advised Officer Robinson that he was talking to him.

- Officer Clifford stated that when he walked up to Officer Robinson and again asked him if he lived there, Officer Robinson replied, "I just told you that I don't live here, but what does it matter? I live in the block.

- Officer Clifford stated that he informed Officer Robinson that there were private property signs posted and if he did not live there, he needed to move on, but Officer Robinson replied, "I don't have to do shit that you say."

- Officer Clifford stated that he told Officer Robinson that he could not see his hands and asked him to show his hands for safety purposes, but Officer Robinson said, "I'm not doing shit that you have to say. I'm not doing like a motherfucking thing. "

- Officer Clifford later stated that based on Officer Robinson jumping up quickly as if he were about to flee, immediately concealing his hands and not knowing that he was a police officer, he (Officer Clifford) believed that Officer Robinson was giving the characteristics of an armed gunman or of a person trying to conceal an object.

- Officer Clifford stated that Officer Roe asked Officer Robinson why he was giving them so much attitude and asked him if he had a weapon on him. Officer Robinson said, "Yeah." Officer Clifford explained that he could not see Mr. Robinson's hands so he grabbed Officer Robinson.

7

- Officer Clifford stated that they tussled with Officer Robinson and when he observed his service pistol, he turned him over and attempted to handcuff him. Officer Clifford stated that when he got one (1) of the handcuffs on, Officer Robinson said, "I am the police, y'all fucked up, and y'all fucked up."

- Officer Clifford stated that he did not see any identification and he continued to handcuff Officer Robinson.

- Officer Clifford stated that once he secured Officer Robinson in handcuffs, Officer Robinson was lying on his stomach with his jacket pulled back. This is when Officer Clifford observed Officer Robinson's service pistol.

- Officer Clifford later stated that Officer Robinson did not identify himself as a police officer until he was handcuffed.

- Officer Clifford stated that he instructed Officer Roe to remove the service pistol from the holster for their safety and secured the weapon in their vehicle.

- Officer Clifford stated that he turned Officer Robinson back over and let him sit. He stated during this time Officer Robinson stated that they were, "fucked up" and that he would, "sue" them.

- Officer Clifford stated that he told Officer Robinson that he had taken this to an unnecessary level and that Officer Robinson could have identified himself earlier.

- Officer Clifford described Officer Robinson's behavior as hostel, confrontational and unprofessional and added that he acted as if he was trying to challenge them into something.

- Officer Clifford stated that Officer Robinson's demeanor changed before the officials arrived on the scene and he definitely became humble. Officer Clifford indicated that Officer Robinson subsequently acknowledged that he was wrong and related that he had a fight with his brother and that it was a bad day. Officer Robinson also said that he should have said something to him, that he screwed up and asked Officer Clifford if he could work with him and help him out, but Officer Clifford advised him that it was too late for that.

- Officer Clifford indicated that Officer Robinson remained handcuffed until the officials arrived on the scene and that he did not use any other force.

- Officer Clifford stated that Officer Robinson asked him what's going to happen and he advised that the officials would figure it out.

8

## Officer Ryan Roe                                    GRU

On November 6, 2013, Officer Ryan Roe provided an audio recorded statement to Agent George Singletary of the IAD and the following is a synopsis of his statement: **(Attachment 5)**

- Officer Roe stated that they were on patrol on C Street, Southeast, and that Officer Pinto was driving, Officer Clifford was the front passenger and he was sitting in the rear. Officer Roe stated that they were operating an unmarked Ford Explorer with the emergency lights on the dashboard and Florida tags displayed on the rear of the vehicle.

- Officer Roe stated that they observed a house that appeared to be vacant with a "No Trespassing" sign and two (2) signs that said, "Posted Private Property." Additionally, two (2) males[4] were sitting on the retainer wall of the property.

- Officer Roe stated that they stopped in front of Officer Robinson and the other male. Both stared at them and appeared to be nervous. Officer Roe stated that Officer Pinto yelled through the window, "Hey, police, you guys live here?" Officer Roe stated that the other male responded, "No" and then stated, "You know I, I live in the block," or something like that.

- Officer Roe stated that Officer Robinson appeared as if he were going to flee the scene, so they decided to conduct a "contact" on them.

- Officer Roe stated that as they were exiting their vehicle, Officer Robinson jumped up right away like he was going to run. Officer Roe stated that Officer Robinson was not dressed in a manner that would indicate that he was a police officer. Officer Roe stated that they had never met Officer Robinson before and that they did not know who he was.

- Officer Roe stated that Officer Clifford told Officer Robinson not to run and Officer Robinson replied, "Who are you talking to? You can't talk to me that way." Officer Roe stated that Officer Robinson sat back down on the wall and Officer Clifford approached him (Officer Robinson).

- Officer Roe stated that he approached the other guy, who seemed very nervous. Officer Roe stated that he questioned him briefly, asked him if he lived on the property and why he was there. The male stated that he was just walking by and sat down on the wall, because he was tired. Officer Roe then asked him if he had any weapons or drugs.

---

[4] One of the males was later identified as Officer Jamal Robinson.

9

- Officer Roe stated that he saw Officer Clifford interacting with Officer Robinson and heard verbal hostility coming from Officer Robinson. Officer Roe stated that after he finished patting down the individual he had stopped, he assisted Officer Clifford.

- Officer Roe stated that he heard Officer Clifford explain to Officer Robinson that he was on private property and that he was going to check him for weapons, but Officer Robinson continued to argue.

- Officer Roe asked Officer Robinson if he had a gun and he replied, "Yes." Officer Roe stated that he and Officer Clifford briefly paused to see what Officer Robinson was doing and then Officer Roe figured that Officer Robinson definitely had a gun. Officer Roe stated that they grabbed Officer Robinson's arm and placed him in handcuffs to secure him.

- Officer Roe stated that Officer Robinson asked them what they were doing as he kept trying to get up. Officer Roe stated that he and Officer Clifford struggled a little bit with Officer Robinson and then they both placed him into an arm bar and rolled him on his stomach.

- Officer Roe stated that Officer Robinson was rolled onto the grassy area of the front yard onto his stomach. Officer Roe stated that they handcuffed Officer Robinson and he yelled out, "Hey, you guys fucked up, I am a police officer and my credentials are in my pocket."

- Officer Roe stated that Officer Robinson was still struggling with them while they were handcuffing him. Officer Roe stated that Officer Robinson's shirt moved and it exposed his service pistol.

- Officer Roe stated that Officer Robinson also said during the interaction that, "You know you guys fucked up. I'm going to sue you. That's what I do." Officer Roe stated when Officer Robinson was secured, he took his gun out his holster, and secured it while Officer Clifford requested Sergeant Sloan to respond to the scene.

- Officer Roe stated that he put Officer Robinson's gun in a brown paper bag and secured it in the MPD vehicle until Sergeant Sloan took possession of it.

- Officer Roe stated that Officer Clifford learned that Officer Robinson lived in the same block of this incident. [5]

---

[5] Officer Robinson lives in the 3700 block of Horner Place, Southeast Washington, D.C.

- Officer Roe later stated that based on his experience, often times when they contact persons who are in possession of firearms and they admit that they are in possession of a firearm, they are usually cooperative.

- Officer Roe stated that right before they put the handcuffs on Officer Robinson, he identified himself as a police officer and advised that his credentials were in his pocket.

- Officer Roe stated that Officer Pinto identified himself, "Hey, police," and engaged in a conversation with Officer Robinson.

- Officer Roe stated that it was a few more seconds before they actually exited the vehicle. Officer Roe stated that they were dressed in plainclothes with tactical vests with "POLICE" in the front and back of the vests. Officer Roe stated that all of his police equipment was in tact except his badge, which was tucked underneath his vest. Officer Roe stated that Officer Clifford was dressed in the same indentifying attire with his MPD badge displayed and Officer Pinto was dressed in the same attire, but he was not sure if Officer Pinto's MPD badge was displayed.

- Officer Roe stated that they did not identify the black male that was sitting on the wall with Officer Robinson. Officer Roe indicated that due to the commotion, the other individual was able to leave.

## WITNESS CANVASS

Agent Leon Epps canvassed the area and interviewed two (2) witnesses to the event, Mr. Lymar Curry of 5513 C Street, Southeast, and Mr. Marquette Austin of 5514 C Street, Southeast.

## POLICE WITNESS STATEMENT(S)

**Sergeant Curt Sloan**                                                      **GRU**

On March 1, 2014 Sergeant Curt Sloan provided an audio recorded statement to Agent Eames of the IAD and the following is a synopsis of his statement: **(Attachment 6)**

- Sergeant Sloan stated that he was requested to respond to the front of 5517 C Street, Southeast, for an altercation with a First District Officer Robinson.

- When Sergeant Sloan arrived on the scene, Officer Robinson was sitting on a wall and his demeanor seemed fine.

11

- Sergeant Sloan stated that he had been advised that Officer Robinson refused to make his identity known when asked by Officers Clifford, Roe, and Pinto and after he was directed to stand up, he told the officers he was not doing anything and refused to comply with their directives.

- Officer Robinson also failed to inform the officers that he was an armed officer until they started to handcuff him.

- Sergeant Sloan stated that Officer Robinson was released from handcuffs approximately twenty (20) minutes after he arrived on scene.

## CIVILIAN WITNESS STATEMENT(S)

**Mr. Lymar Curry**                                     **5513 C Street, Southeast**

On November 6, 2013, Mr. Lymar Curry provided a statement to Agent Leon Epps of the IAD. The following is a synopsis of his statement: **(Attachment 7)**

Mr. Curry stated that several people were sitting outside his residence making a lot of noise as usual. Mr. Curry stated there were three (3) or four (4) police officers and six (6) or seven (7) citizens out there. Mr. Curry stated the gentleman the police had detained appeared to be resisting. Mr. Curry stated words were going back and forth between the citizens and the officers. However, he could not hear what they were saying.

**Mr. Marquette Austin**                                **5414 C Street, Southeast**

On November 6, 2013, Mr. Marquette Austin provided statement to Agent Leon Epps of the IAD. The following is a synopsis of his statement: **(Attachment 8)**

Mr. Austin stated that he has known Officer Robinson since he was a little boy. Mr. Austin stated that Officer Robinson was sitting on the wall in front of 5517 C Street, Southeast, talking to his brother, Mr. Lamont Brown, when the police pulled up in a vehicle with dark tinted windows and a Florida registration.

Mr. Austin stated that when the officers exited the vehicle, he heard Officer Robinson say something like, "I do this everyday, I do this for a living." Mr. Austin stated he doesn't know what the officers said next. However, Officer Robinson said something like I have my gun, badge, and ID on me.

Mr. Austin stated that the officers then shouted, "Gun, Gun" and started to rough up Officer Robinson. Mr. Austin stated that Officer Robinson told the officers the entire time that he had a badge and ID, but the officers kept shouting, "Stop resisting." Mr. Austin stated in his opinion Mal was not resisting. Mr. Austin

stated they kept Mal handcuffed over an hour after they knew who he was. Lastly, Mr. Austin stated he did not hear anyone use profanity. [6]

**Mr. Lamont Brown**                                13426 Deben Tree Way,
                                                   Germantown, Maryland 20874

On November 6, 2013, Mr. Lamont Brown provided an audio recorded statement to Agent Michael Eames of the IAD. The following is a synopsis of his statement: **(Attachment 9)**

- Mr. Brown stated that his brother[7] was sitting on the wall discussing an incident that happened earlier when a truck pulled up with tinted windows and the occupants[8] asked Officer Robinson where he lived.

- Mr. Brown stated that Officer Robinson responded, "No" and the officers got out the car, asked them why they were there and asked them to show their hands.

- Mr. Brown indicated that Officer Robinson told the officers that they were just sitting on the wall and then asked them if it was illegal to sit on the wall. Mr. Brown stated that Officer Robinson did not stand up.

- Mr. Brown stated that the officers informed them that they were sitting on a wall with a, "No Trespassing" sign behind them and Officer Brown replied that they were just sitting there.

- Mr. Brown stated that Officer Robinson identified himself, something to the affect of, "I'm MPD" and that after he identified himself, the officers were on top of Officer Robinson and he (Mr. Brown) turned around and grabbed his camera.

- Mr. Brown stated that the officers told Officer Robinson to stop resisting, but Mr. Brown explained that Officer Robinson was not resisting, because his hands were already behind his back.

- Mr. Brown stated that the officers then got up and asked Officer Robinson if he had a gun before they asked him was he MPD.

- Mr. Brown stated that he recorded the incident.

- Mr. Brown indicated that the officers said that Officer Robinson resisted and that he should have identified himself.

---

[6] Mal is the nickname of Officer Jamal Robinson.
[7] Mr. Brown's brother is Officer Jamal Robinson and the defendant in the no permit arrest.
[8] Officers Pinto, Clifford and Roe.

13

- Mr. Brown stated that Officer Robinson had his badge on him and the badge was visible.

- Mr. Brown stated that he and Officer Robinson had been involved in an argument earlier in the day over mechanical repairs and the cost of the repairs and that they were just talking.

- Mr. Brown stated that while Officers Pinto, Clifford and Roe were in their vehicle, he could not tell that they were police officers. Mr. Brown stated that the windows on their vehicle were tinted. Mr. Brown stated that he thought they were just, "regular dudes coming up." Mr. Brown stated that after they got out of the vehicle, he could see that they were the police.

- Mr. Brown stated that he heard the officers ask, "Do you live there?"

- Mr. Brown stated that they said they "made a traffic stop on me," but nobody came to me. Everyone went to Officer Robinson like he was doing something wrong. The officers approached and everything went wild.

## INVOLVED OFFICER(S) STATEMENT(S)

**Officer Jamal Robinson**                                        **First District**

On November 7, 2013, Officer Jamal Robinson provided an audio recorded statement to Agent Eames of the IAD. The following is a synopsis of his statement: **(Attachment 10)**

Officer Robinson stated that while sitting outside on a wall speaking to his brother about a family incident that had occurred earlier in the day, a truck pulled up and someone rolled down the window.

As they[9] were talking, they got out of the truck, approached him and told him to stand up. Officer Robinson asked why and they again told him to stand up. Officer Robinson told them no and again asked them why. The officers again told him to stand up and said, "This is a order" and Officer Robinson told them that he was not standing up.

The officers then asked him (Officer Robinson) if he had any weapons on him and he replied, "Yeah, I do. I have my gun, my badge and my credentials."

Officer Robinson stated that as soon as he stated he had his gun and badge, an officer immediately tackled him and attempted to handcuff him. Officer Robinson told the officers that he was MPD. Officer Robinson indicated that another officer came over and put his knee in his (Officer Robinson) neck. Officer Robinson

---

[9] Later identified as Officers Pinto, Clifford and Roe.

JamalRobinson v DC000033

explained that all three (3) officers attacked him, but he did not resist. Officer Robinson explained that he was rolled over and was sitting on his credentials because they were in his rear pocket. Officer Robinson indicated that he told the officers that his credentials were in his pocket.

Officer Robinson stated that the officers requested their officials to respond to the scene.

Officer Robinson stated that he recognized Officer's Pinto, Clifford and Roe as the police when they exited their unmarked vehicle.

Officer Robinson stated that the officers arrested his brother for a suspended license even though he wasn't driving the vehicle and waited for the officials to respond to the scene.

On March 9, 2014, Officer Jamal Robinson provided a supplemental audio recorded statement to Agent Eames of the IAD. The following is a synopsis of his statement: **(Attachment 11)**

- Officer Robinson stated that he did not say that he did not have to do shit the officer said.

- Officer Robinson stated that he did not say, "I'm not doing shit that you say and I'm not doing a motherfucking thing".

- Officer Robinson stated that he did say that they had "fucked-up," but did not say he was going to sue.

- Officer Robinson stated that he told the officer that he was the police before they handcuffed him.

- Officer Robinson stated that he did tell the officers that what they did was "Fucked up" after he was handcuffed.

- Officer Robinson stated that he complied with what the officer told him to do, but he felt that he was not doing anything, but sitting there on the wall. Officer Robinson stated that it is not against the law to sit down in the District of Columbia and he does not have to stand up for you to talk to him.

- Officer Robinson stated that the on-duty officer is in charge when confronting an off-duty officer. Officer Robinson stated that he was not aware of the universal hand signal to recognize off-duty police officers.

- Officer Robinson stated that from the time Officer Pinto, Clifford and Roe exited their unmarked vehicle, he recognized them as police officers.

15

Additionally, he stated it was approximately one (1) to three (3) minutes passed before he was handcuffed.

## PHYSICAL EVIDENCE SECTION

Mr. Brown video recorded the incident with his cell phone and provided a copy of the video. **(Attachment 12)**

A query from the Office of Unified Communications indicated that there were twenty-two (22) calls for service in the 5500 block of C Street Southeast between 05/01/2013 and 11/07/2013. The call for service pertained to the following: disorderly, stolen autos, domestic violence, hold up alarm and thefts. **(Attachment 13)**

## DISCREPANCIES AND CLARIFICATIONS

Supplemental statements were not obtained from Officers Pinto, Clifford and Roe. Officers Pinto, Clifford and Roe's statements were provided as complainants in this investigation. However, there were inconsistencies with their statements and the video footage of the incident, which is being investigated under IS Number 13-003170. That investigation has been presented to the USAO for criminal review, due to civil rights violation allegations made by Officer Robinson.

**What was Officer Robinson wearing?**

Officer Robinson was wearing a green shirt, tan jeans, and a black jacket.

**Did Officer Robinson use profane language?**

Officers Pinto, Clifford and Roe all alleged that Officer Robinson used profanity during this incident and made statements to the affect of, "I don't have to do shit that you say," "I'm not doing shit that you have to say" and "I'm not doing a motherfucking thing. " However, Officer Robinson only admitted to saying, What ya'll did was fucked up."

## UNITED STATES ATTORNEY'S OFFICE REVIEW/REVERSE GARRITY

This case was not submitted to the United States Attorney's Office because there was no evidence of criminal misconduct on the part of Officer Robinson.

## SUMMARY AND CONCLUSION

On November 6, 2013, Officers Clifford, Pinto and Roe were on patrol in the 5500 block of C Street, Southeast. Officers Clifford, Pinto and Roe are NSID members of the GRU. Officers Clifford, Pinto and Roe were operating an

16

unmarked vehicle with no front tag and tinted out windows and they were wearing plain clothes with Tactical Vests with the word, "Police" displayed across the front and rear of their vests.

As Officers Clifford, Pinto and Roe entered the 5500 block of C Street Southeast, they observed two people sitting on a retainer wall in front of the residence. One of the persons was later identified as off duty MPD Officer Jamal Robinson. Officer Pinto believed that Officer Robinson was in violation of Unlawful Entry because he was seated on a retaining wall of a property that had "No trespassing" signs posted. Officer Pinto exchanged a few words with Officer Robinson and decided to exit the vehicle along with his counterparts.

During the contact, Officer Robinson did not identify himself, refused directives given to him by on duty officers. When Officer Robinson said he had a gun, he had not yet indentified himself as an off duty MPD Officer. Subsequently, this caused the GRU Officer to act in response to the seriousness of his actions and take Officer Robinson to the ground rendering the scene safe. Furthermore, it was reported that Officer Robinson was actively resisting during the handcuffing.

After exiting the vehicle, Officer Clifford became the primary contact officer in the communication with Officer Robinson. Officer Clifford stated that the incident started out as a "contact" and he told Officer Robinson to stop because he thought that he was about to run away.

Officer Robinson indicated that he did not know that Officers Clifford, Pinto and Roe were police officers when they first pulled up because they were utilizing an unmarked vehicle with tinted windows and no front tag.

During this event, Officer Robinson was asked if he had a gun on him and he replied that he did. Officer Robinson was immediately handcuffed and restrained. Officer Robinson stated that after acknowledging that he had a gun, he indicated that he had a badge and ID. Due to Officer Robinson indicating that he had a weapon, Officers Pinto, Clifford and Roe immediately secured Officer Robinson.

## FINDINGS

It is the findings of this Agent that Officer Robinson was sitting on the fringe of an abandoned property, when he was stopped by NSID, GRU members. In the District of Columbia, the sidewalk and steps of private residences are considered public property. Officer Robinson did not appear to be in violation of any laws.

When questioned by the on duty MPD members as to if he was armed, as a active armed MPD officer when first approached, Officer Robinson "should have" done more to make his identity known. Instead, he first related to the officers that he was in fact armed, which caused them to immediately react. After he was secured, Officer Robinson advised that he was an MPD officer.

JamalRobinson v DC000036

In addition, Officer Robinson admittedly used profanity towards the GRU members on the scene of the incident.

## RECOMMENDATIONS

It is the recommendation of the Internal Affairs Division that the facts and circumstances surrounding this investigation regarding the allegation of Officer Misconduct, by Officer Jamal Robinson, when approached by members of the NSID, GRU, on November 6, 2013, be classified as **SUSTAINED**.

It is the recommendation of the Internal Affairs Division that the facts and circumstances surrounding this investigation regarding the allegation of Officer Misconduct, Orders and Directives when he used profanity after being stopped by Officers Pinto, Clifford and Roe, be classified as **SUSTAINED**.

## MISCELLANEOUS

Before completion of this final report, the undersigned agent had a preliminary conference with Lieutenant Norman Power of the Internal Affairs Division. Lieutenant Power concurred with the findings and recommendations.

Michael Eames Sr.
Agent
Internal Investigations Team II

18