UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
FEB - 8 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

JAMAL B. ROBINSON, )
)
    Plaintiff, )
)
v. ) Civil Action No. 15-100 (RJL)
)
DISTRICT OF COLUMBIA, *et al.*, )
)
    Defendants. )

## MEMORANDUM OPINION
February 7, 2019 [Dkt. ## 23, 27]

Plaintiff Jamal B. Robinson ("plaintiff" or "Robinson") is a former Metropolitan Police Department ("MPD") officer in the District of Columbia. He filed this lawsuit against two other members of the MPD—Detective Scott Pinto and Officer Maurice Clifford[1]—and the District of Columbia (collectively, "defendants"), alleging that on November 6, 2013, while Robinson was off duty, Detective Pinto and Officer Clifford detained him without legal justification and employed excessive force against him in violation of Robinson's constitutional rights and District of Columbia laws against false arrest and assault and battery. The District of Columbia is liable, according to Robinson, for negligently training

---

[1] MPD Officer Ryan Roe—adopting the spelling used by MPD Internal Affairs—is also identified as a party to this suit in paragraph seven of Robinson's Amended Complaint [Dkt. # 8]. Officer Roe, however, was not timely served with the original complaint and was consequently dismissed without prejudice from this case when it was pending before the Superior Court of the District of Columbia. D.C. Super. Ct. Record at 7-9 [Dkt. # 3-1]. Since removal, Robinson has not requested dissolution or modification of the Superior Court's order, filed additional affidavits of service of his original or amended complaint, or otherwise provided reason to think dissolution or modification of the order dismissing Officer Roe is warranted. Accordingly, the Superior Court's order remains operative, *see* 28 U.S.C. § 1450, and Officer Roe is not a party to this case.

1

and supervising Pinto and Clifford. Defendants have moved for summary judgment on all pending claims. Defs.' Mot. Summ. J. ("Defs.' Mot.") [Dkt. # 23].

Upon consideration of the briefing, the record,[2] and the relevant law, the Court GRANTS defendants' motion for summary judgment for the reasons stated below.

## BACKGROUND

On November 6, 2013, at about 6:20 pm, Robinson was seated on a low retaining wall outside of a vacant house in Southeast Washington, D.C. Defs.' Stmt. Mat. Facts ("Defs.' SOMF") ¶¶ 9, 13 [Dkt. # 23-2]; Pl.'s Stmt. Relevant Facts ¶ 3 [Dkt. # 24]. Because he was employed as a police officer at the time, Robinson was carrying MPD credentials in his back pocket and wearing a police badge on the front of his right hip under an open jacket. *Id.* ¶¶ 1, 18, 63; Defs.' Mot. Ex. 1 at 80:1-6, 81:1-7 [Dkt. # 23-4]. But Robinson was off duty and dressed in civilian clothing, so passersby would not have recognized him as an MPD officer unless they happened to catch a glimpse of his badge. Defs.' SOMF ¶ 18.

Pinto and Clifford, also MPD officers, were on duty that day, patrolling Southeast Washington and conducting gun interdiction operations with fellow MPD Officer Ryan Roe. Defs.' SOMF ¶¶ 9, 11. On their patrol, Pinto and Clifford observed Robinson seated on the wall and talking to an individual—who turned out to be Robinson's brother—in an improperly parked car with heavily tinted windows. *Id.* ¶¶ 13-17. The vacant house behind Robinson had a no trespassing sign posted on the door. *Id.* ¶ 13; Defs.' Mot. Ex. 1 at 50:7-

---

[2] On July 16, 2018, Robinson filed a Consent Motion to Amend Plaintiff's Opposition to Motion for Summary Judgment Exhibit List [Dkt. # 27], seeking to add an MPD Internal Affairs report to the summary judgment record. There being no opposition, Robinson's motion to amend is GRANTED. The document attached to the

2

12. Pinto and Clifford both had over a decade of experience as MPD officers and, based on that experience, believed that abandoned houses are sometimes used to store weapons and drugs. Defs.' SOMF ¶¶ 2, 4, 20. They stopped their vehicle to investigate. *Id.* ¶¶ 23-27.

After exiting the vehicle, Pinto, Clifford, and Roe approached Robinson and asked him to stand up and submit to a search. Defs.' Mot. Ex. 1 at 66:4-6. Robinson declined, so the other officers asked whether he was carrying any weapons. *Id.* at 66:7-13. Although off duty, Robinson was carrying his gun, and he truthfully responded that he was armed. *Id.* at 66:14-17. Importantly, Robinson told Pinto, Clifford, and Roe that he had a gun *before* he told them that he was a member of the MPD. *Id.* at 201:12-202:3.

Upon hearing that Robinson was carrying a gun, the other officers tackled him to the ground and placed him in handcuffs. Defs.' SOMF ¶ 45; Defs.' Mot. Ex. 1 at 66:18-67:10. During the handcuffing, a police officer lay on top of Robinson, an officer briefly placed a knee on Robinson's neck, and an officer applied an arm bar to one of Robinson's arms. Defs.' SOMF ¶ 42; Defs.' Mot. Ex. 1 at 75:6-18. Robinson concedes, however, that the entire process was "pretty fast." Defs.' Mot. Ex. 1 at 78:2-6. The officers were able to apply the handcuffs "immediately," and in Robinson's opinion, no officer contacted his body for longer than necessary. *Id.* at 78:2-6, 79:2-6, 227:18-228:3. The entire handcuffing process took "under a minute." *Id.* at 78:2-6.

After he was handcuffed, Robinson repeatedly told Pinto, Clifford, and Roe that he was an MPD officer. Defs.' Mot. Ex. 1 at 78:7-9. The on-duty officers searched Robinson,

---

motion was considered part of the record when deciding defendants' motion for summary judgment.

removed his weapon, found the MPD credentials in his back pocket, and sat him up. Defs.' SOMF ¶¶ 54, 63; Defs.' Mot. Ex. 1 at 79:22-80:6. Clifford then called their supervisors. Defs.' SOMF ¶ 61.

Robinson recalls that the supervising officers took over an hour to arrive at the scene and that he remained in handcuffs for the entire wait. Defs.' SOMF ¶¶ 65-66. After they arrived, the supervisors released Robinson without charges. *Id.* ¶ 68. Robinson's brother was arrested for operating a vehicle with a suspended license and was issued tickets for parking illegally and for a window tint violation. *Id.* ¶¶ 75-76.

Immediately following the incident, Pinto, Clifford, and Roe provided statements to MPD Internal Affairs, prompting an investigation into both their conduct and Robinson's conduct. Defs.' SOMF ¶¶ 77, 79. Internal Affairs subsequently issued a report concluding that Robinson engaged in misconduct by failing to inform Pinto, Clifford, and Roe that he was an MPD officer before announcing that he was carrying a weapon. *Id.* ¶ 80. In a separate report, Internal Affairs determined that the on-duty officers' use of force during the incident was justified. *Id.* ¶ 81.

After MPD's internal investigation concluded, Robinson filed this lawsuit in the Superior Court of the District of Columbia. Notice of Removal ¶ 1 [Dkt. # 1]. Defendants timely removed the case to this Court, *see id.*, and on February 12, 2015, Robinson filed an Amended Complaint [Dkt. # 8], which remains the operative pleading.

Robinson's amended complaint alleges three causes of action under District of Columbia tort law and two causes of action under 42 U.S.C. § 1983. On June 17, 2015, I

dismissed Count V of the amended complaint as conceded, leaving claims for false arrest, assault and battery, and negligent training and supervision under District of Columbia law, and a claim under 42 U.S.C. § 1983 alleging violations of Robinson's Fourth Amendment rights. Defendants have moved for summary judgment on all four remaining claims, and their motion is ripe.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when the pleadings, stipulations, affidavits, and admissions in a case show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A court deciding a motion for summary judgment must accept as true the evidence of, and draw "all justifiable inferences" in favor of, the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But if the moving party identifies evidence demonstrating the absence of a genuine dispute of material fact by "citing to particular parts of materials in the record," or by showing that the opposing party "cannot produce admissible evidence to support" the "presence of a genuine dispute," Fed. R. Civ. P. 56(c), the nonmoving party must "designate specific facts showing that there is a genuine issue for trial" to prevail, *Celotex*, 477 U.S. at 324 (quotation marks omitted).

Pointing to "a scintilla of evidence" or "mere allegations or denials" is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 248, 252. Rather, a genuine issue for trial exists when the record contains evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

5

## ANALYSIS

Because no reasonable jury could return a verdict in Robinson's favor on any of the four claims pending in this case, defendants' motion for summary judgment must be granted.

### I. False Arrest

In Count I of the amended complaint, Robinson alleges that, on November 6, 2013, Pinto and Clifford falsely arrested him in violation of District of Columbia law. "The court's inquiry in a false arrest claim centers on whether the [defendant police] officer was justified in arresting the plaintiff." *Cotton v. District of Columbia*, 541 F. Supp. 2d 195, 205 (D.D.C. 2008) (quotation marks omitted) (applying District of Columbia law). Because this inquiry is "substantially identical" to the question whether a seizure was constitutionally permissible, *Scott v. District of Columbia*, 101 F.3d 748, 753 (D.C. Cir. 1996), a plaintiff who "was legally stopped for investigatory purposes," in accordance with the Fourth Amendment, "cannot substantiate [a] claim[] that she was falsely arrested" under District of Columbia law, *Cotton*, 541 F. Supp. 2d at 205. Here, Robinson was legally stopped for investigatory purposes, so his false arrest claim cannot proceed.

An investigatory stop is justified at its outset "so long as [the police officers conducting the stop] have 'reasonable, articulable suspicion' of criminal conduct." *United States v. Goddard*, 491 F.3d 457, 460 (D.C. Cir. 2007) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). This "minimal level of objective justification," *id.* (quoting *INS v. Delgado*, 466 U.S. 210, 217 (1984)), is intended to be "significantly lower than the probable cause required for a warrant," *id.*, and is assessed "through the eyes of a reasonable and

6

cautious police officer on the scene, guided by his experience and training," *United States v. Bailey*, 622 F.3d 1, 6 (D.C. Cir. 2010) (quoting *United States v. Edmonds*, 240 F.3d 55, 60 (D.C. Cir. 2001)).

Pinto and Clifford had the requisite reasonable and articulable suspicion of criminal conduct when they stopped Robinson on November 6, 2013. The District of Columbia criminalizes the entry or attempted entry of public or private property when done without lawful authority, against the express will of the lawful occupant or owner, and with general intent to enter the property. *See Bolger v. District of Columbia*, 608 F. Supp. 2d 10, 18-19 (D.D.C. 2009) (citing *Culp v. United States*, 486 A.2d 1174, 1176 (D.C. 1985)); D.C. Code § 22–3302. Before detaining Robinson, Pinto and Clifford observed that he was sitting on a retaining wall on the fringe of a private property,[3] that there was a no trespassing sign posted on the same property, and that the property appeared to be abandoned. The no trespassing sign served notice that the lawful owner, or occupant, did not want others on the property,

---

[3] Robinson argues that Pinto and Clifford cannot have reasonably suspected unlawful entry because MPD concluded in its internal investigation that Robinson did not violate any laws and that sidewalks and steps are public property. This argument misunderstands both the controlling legal question and Pinto and Clifford's factual justification for stopping Robinson. To determine whether a seizure is lawful, "the court should ask whether the [police officers] acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed . . . after the fact." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). MPD's after-the-fact determination that Robinson did not break the law does not therefore abrogate reasonable suspicion that was properly formed at the time Pinto and Clifford initiated their investigatory stop. As for the factual justification, Pinto and Clifford's suspicion was not based on Robinson's presence on steps or a sidewalk. Pinto and Clifford observed Robinson sitting on a short retaining wall, which the on-duty officers believed to be the curtilage of a privately owned yard. Defs.' Mot. Ex. 3 at 43:14-45:8 [Dkt. # 23-6]. Even if Robinson is correct that steps and sidewalks are public property—neither he nor MPD's internal report cites a legal authority for the proposition—it does not necessarily follow that the retaining wall is public property, so it does not follow that Pinto and Clifford lacked a "reasonable good faith belief that [Robinson] committed [an] offense." *Moorehead v. District of Columbia*, 747 A.2d 138, 147 (D.C. 2000) (quoting *Safeway Stores, Inc. v. Kelly*, 448 A.2d 856, 862 (D.C. 1982)). Pinto and Clifford's reasonable, good-faith belief that Robinson had entered a property's curtilage is sufficient to defeat a false arrest claim. *See id.*

and the property's apparent disuse lowered the likelihood that Robinson was that lawful owner or occupant. Taken together, Pinto and Clifford's observations provided an objective and articulable basis for suspecting that Robinson had unlawfully entered the curtilage of another's property. The observations thus supply all the justification needed to lawfully stop Robinson and inquire about this suspicion.

Robinson argues that the beginning of the investigatory stop is not the end of the story. Even if justified at its outset, an investigatory stop may not be "extend[ed] . . . beyond a reasonable duration." *United States v. Vinton*, 594 F.3d 14, 23 (D.C. Cir. 2010). And according to Robinson, Pinto and Clifford prolonged his seizure unreasonably by holding him in handcuffs for over an hour—more time than needed to investigate the suspected unlawful entry—until supervising officers arrived.

But police officers conducting an investigatory stop are permitted to react to changing circumstances. *See United States v. Sharpe*, 470 U.S. 675, 688 (1985) (holding that a "somewhat longer detention" was reasonable because the duration "was simply the result of a graduated response to the demands of the particular situation" (alterations and quotation marks omitted)). The Supreme Court has cautioned that, when assessing the duration of an investigatory stop, a court "should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *Id.* at 686.

Pinto and Clifford faced just such a situation here. When they decided to extend the investigatory stop until their supervisors arrived, the circumstances were evolving, and

8

unlawful entry was no longer the only pertinent concern. Pinto and Clifford were, by then, confronted with an individual who had neither cooperated, nor immediately identified himself as a police officer, but who had in his possession a weapon and MPD credentials. They also had to account for Robinson's brother, who was suspected of and later arrested for his own criminal activity, leaving the three officers on duty responsible for two suspects and a recovered firearm at a scene likely to precipitate both a criminal investigation and an internal MPD investigation. Given the multiple potential offenses, suspects, and investigations at issue, Pinto and Clifford's decision to wait for their supervisors was a "diligent[] . . . means of investigation" likely to resolve all issues in an efficient manner. *Sharpe*, 470 U.S. at 686; *see also United States v. Davies*, 768 F.2d 893, 902 (7th Cir. 1985) (reasonable to detain a suspect until supervisors arrive to continue questioning). The fact that the wait ultimately lasted over an hour was unfortunate, but does not transform a carefully pursued investigation into an unreasonable one. *See Sharpe*, 470 U.S. at 686-88 (rejecting *per se* rule for evaluating the reasonableness of an investigatory stop's duration); *United States v. Alpert*, 816 F.2d 958, 964 (4th Cir. 1987) (reasonable to detain a bag for fifty minutes until a dog sniff could be performed); *United States v. Borrero*, 770 F. Supp. 1178, 1189-91 (E.D. Mich. 1991) (seventy-minute investigatory stop held reasonable).

Both the justification for and the duration of the seizure at issue in this case were thus reasonable. As a result, Robinson's false arrest cannot proceed, and defendants are entitled to summary judgment on Count I.

9

## II. Assault and Battery

Robinson's second count alleges that Pinto and Clifford assaulted and battered him in violation of District of Columbia law. As with Count I, undisputed facts preclude Robinson's success on this claim.

A police officer in the District of Columbia "has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary." *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993) (quotation marks omitted). Determining that a use of force is unreasonable, and therefore unprivileged, requires an analysis "similar[]" to "the excessive force analysis in Section 1983 claims." *Mazloum v. D.C. Metro. Police Dep't*, 522 F. Supp. 2d 24, 42 (D.D.C. 2007) (citing *Smith v. District of Columbia*, 882 A.2d 778, 793 (D.C. 2005) and *Etheredge*, 635 A.2d at 916). But such a determination is a prerequisite to proving that a police officer committed assault and battery against a suspect. Without facts from which a jury could conclude that an officer's use of force was unreasonable, an assault and battery claim raised against the officer cannot proceed. *See Cotton*, 541 F. Supp. 2d at 208 (granting summary judgment "[b]ecause . . . as a constitutional matter [the defendant police officer] did not use excessive force" and "[t]herefore, . . . the plaintiff cannot show that [the defendant] used more than reasonable force for the purposes of common law assault and battery").

No fact in the summary judgment record permits the conclusion that Pinto and Clifford used unreasonable force against Robinson. Police officers with "reasonable

suspicion to [make an investigatory] stop" and a "reasonable . . . fear that [the person being stopped] ha[s] a weapon" may "take the necessary steps to ensure that he c[an]not use it"—including "tackling" the suspect and "plac[ing] him in handcuffs." *United States v. Dykes*, 406 F.3d 717, 720 (D.C. Cir. 2005). Such steps pass "[t]he test . . . of reasonableness," *id.*, and tackling and handcuffing a suspect to prevent him from using a weapon precisely describes Pinto and Clifford's use of force in this case. Robinson's own testimony confirms that Pinto and Clifford employed force only after learning that he was armed with a gun and physically contacted him for no longer than was necessary to apply handcuffs. Defs.' Mot. Ex. 1 at 66:7-14, 78:2-6, 227:18-228:3. Having already determined that the length of the subsequent seizure was reasonable, Pinto and Clifford's decision to leave Robinson handcuffed for the duration of the stop was likewise reasonable in light of the firearm and multiple suspects at the scene. Pinto and Clifford's limited use of force against Robinson is therefore privileged and cannot constitute assault and battery as a matter of District of Columbia law.

### III. Negligent Training and Supervision

Robinson next alleges that the District of Columbia negligently trained and supervised Pinto and Clifford. This claim, Count III of the amended complaint, cannot succeed because Robinson has not identified record evidence from which a jury could find that the District of Columbia was negligent.

"The plaintiff in a negligence action bears the burden of proof on three issues: the applicable standard of care; a deviation from that standard; and a causal connection between

such deviation and the injury." *Edwards v. Okie Dokie, Inc.*, 473 F. Supp. 2d 31, 45 (D.D.C. 2007) (citing *Hill v. Metropolitan African Methodist Episcopal Church*, 779 A.2d 906, 908 (D.C. 2001)). Because the standard of care is itself an element of the claim, a failure to offer evidence sufficient to determine the applicable standard amounts to a failure of proof of negligence. *See District of Columbia v. White*, 442 A.2d 159, 165 (D.C. 1982) ("Absent testimony [about the applicable standard of care], the jury [i]s forced to engage in speculation, which, of course, is prohibited."). When the alleged negligence involves training and supervision of police officers, moreover, a plaintiff's proof of the standard of care generally must include expert testimony because "the standards of police and security training relate to an occupation that is beyond the ken of the average layman." *Parker v. Grand Hyatt Hotel*, 124 F. Supp. 2d 79, 90 (D.D.C. 2000) (quotation marks omitted); *see also Edwards*, 473 F. Supp. 2d at 45 (collecting cases establishing that "D.C. district and local courts have held that expert testimony is required to establish the standard of care for a claim of negligent hiring, training, and supervision of security personnel").

Robinson's negligence claim, which raises questions about how police officers should be trained to react to suspects carrying firearms, implicates exactly this sort of standard. *See White*, 442 A.2d at 164-66 (requiring expert testimony to prove the standard of care applicable to training police officers to handle firearms). No analogue for the training or supervision at issue can be found "within the realm of common knowledge and everyday experience." *Id.* at 164 (quoting *Matthews v. District of Columbia*, 387 A.2d 731, 734-35 (D.C. 1978)). So without expert testimony, a jury evaluating Robinson's negligence claim

12

would be "left . . . with unanswerable questions concerning the . . . content and frequency of an adequate training and retraining program." *Id.* at 165.

Robinson has neither named an expert, nor otherwise explained how he intends to prove the standard of care that applies to his negligence claim at trial. "When expert testimony is necessary to establish the standard of care, a . . . failure to name an expert constitutes grounds for dismissal," and so Robinson's does here. *Edwards*, 473 F. Supp. 2d at 45. Summary judgment will be granted as to Count III.[4]

### IV. Violations of the Fourth Amendment

In Count IV of the amended complaint, Robinson alleges, through 42 U.S.C. § 1983, that Pinto and Clifford unlawfully seized him and used excessive force against him in violation of the Fourth Amendment of the United States Constitution. As discussed, the standard that governs a Fourth Amendment unreasonable seizure claim does not materially differ from the standard that governs a false arrest claim under District of Columbia law. *See Scott*, 101 F.3d at 753 ("The elements of a constitutional claim for false arrest are substantially identical to the elements of a common-law false arrest claim."). And the standard that governs a Fourth Amendment excessive force claim does not materially differ from the standard that governs an assault and battery claim alleged against an arresting police

---

[4] Robinson's brief in opposition to defendants' motion for summary judgment is silent as to Count III of the amended complaint and mentions negligence only in passing. *See* Pl.'s Mem. Opp. to Def.'s Mot. for Summ. J. at 14-15 [Dkt. # 24] (discussing negligence in the context of an excessive force claim without reference to training or supervision). In addition to failing on its merits, therefore, Count III is conceded. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

officer under District of Columbia law. *See Rogala v. District of Columbia*, 161 F.3d 44, 57 (D.C. Cir. 1998) ("Plaintiffs next allege that Officer Williams assaulted and battered them . . . . Th[e applicable] standard is similar to the excessive force standard applied in the Section 1983 context."). I have already determined that Pinto and Clifford had legal justification to seize Robinson, that the seizure at issue did not extend for an unreasonable duration, and that Pinto and Clifford's use of force was not unreasonably excessive. *See supra* pp. 6-11. The rationale underlying those determinations resolves Robinson's Section 1983 claim against him. *See Wardlow*, 528 U.S. at 124-26 (justified investigatory stop does not violate the Fourth Amendment); *Dykes*, 406 F.3d at 719-21 (use of reasonable force during an investigatory stop does not violate the Fourth Amendment). Summary judgment must therefore be granted on Count IV as well.[5]

---

[5] The parties' summary judgment briefing also includes arguments about Robinson's claim for punitive damages, but I need not address them. "It is a well-established principle that punitive damages is not an independent cause of action. Rather, a plaintiff must set forth an independent claim . . . for which punitive damages may be an appropriate *remedy*." *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 175 (D.D.C. 2010) (citations and quotation marks omitted); *see also Mazloum*, 522 F. Supp. 2d at 42 ("[P]unitive damages is a remedy, not a freestanding ground for relief."). Because I have determined that Robinson cannot succeed on any of his independent claims, he necessarily cannot recover punitive damages through this suit.

## CONCLUSION

Pinto and Clifford's seizure of Robinson and use of force against Robinson were reasonable, and Robinson has not identified evidence sufficient to prove his negligence claim. For those reasons, the Court GRANTS defendants' motion for summary judgment. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge